**SEAWAY DRIVE–IN, INC.,**
**Plaintiff-Appellant,**

v.

**TOWNSHIP OF CLAY,**
**Defendant-Appellee.**

No. 85–1353.

United States Court of Appeals,
Sixth Circuit.

Argued March 4, 1986.
Decided May 19, 1986.

Stephen M. Taylor, argued, Taylor & Rubin, P.C., Southfield, Mich., for plaintiff-appellant.

Phillip Easter, argued, and Roy W. Rogensues, Fraser, Mich., for defendant-appellee.

Before ENGEL, KENNEDY and CONTIE, Circuit Judges.

CORNELIA G. KENNEDY, Circuit Judge.

Plaintiff-Appellant appeals the District Court's denial of its motion for attorney's fees under 42 U.S.C. § 1988. The underlying lawsuit involved both state law and constitutional challenges to a township ordinance regulating drive-in theaters. During the preliminary injunction proceedings, which led to settlement of the case through a consent decree, the District Court refrained from discussing the merits of some of the claims that could have given rise to an attorney's fees award under section 1988. The issue on appeal is whether the District Court erred in its holding at a subsequent hearing on the attorney's fees motion that attorney's fees could not be awarded based on those unaddressed claims because they did not raise a substantial constitutional question and were not reasonably related to appellant's ultimate success.

Appellant is a drive-in movie theater located in Clay Township, Michigan. In 1982, appellant sued appellee, Clay Township, to enjoin enforcement of section 1304(3)(h) of Clay Township Zoning Ordinance No. 25, which prohibited the showing of certain sexually explicit movies. The District Court entered a preliminary injunction against the enforcement of the ordinance on August 19, 1982. *Seaway Drive-in, Inc. v. Township of Clay*, No. 82–30051 (E.D.Mich. Aug. 19, 1982) ("*Seaway I*"). The District Court stated that appellant was likely to succeed on the merits of its first amendment challenge to the ordinance.[1]

In November 1982, the township enacted Ordinance 77, a comprehensive ordinance regulating drive-in theaters. On March 3, 1983, appellant initiated this action. The complaint alleged that the new ordinance violated the first, fifth and fourteenth amendments to the United States Constitution and that its application to appellant violated Michigan's Township Zoning Enabling Act, M.C.L.A. §§ 125.271, *et seq.*, and 125.286, *et seq.* The District Court preliminarily enjoined enforcement of eight of the twelve substantive provisions of the ordinance, on the basis that they violated state law when applied to appellant.[2] *Seaway Drive-in, Inc. v. Township of Clay*, No. 83–9025 (E.D.Mich. Jan. 16, 1983) ("*Seaway II*"). Thus, the court did not address the constitutionality of those eight provisions. *See Seaway I & II*, Nos. 82–30051, 83–9025, slip op. at 5 (E.D.Mich. March 25, 1985) (fees opinion). As to the other four substantive provisions, the court first noted that appellant did not challenge two and then declined to enjoin enforcement of the other two because appellee was likely to prevail at trial on its position that

---

1. By consent of the parties and order of the court, dated August 8, 1984, the court's order and opinion were made a final judgment and a permanent injunction.

2. These eight provisions were: section 2 (requiring a perimeter fence to intercept wind blown trash and prevent automobile headlights from shining on adjoining property); section 6 (regulating the placement and construction of outdoor lighting structures); section 7 (regulating the volume and intensity of noise); section 9

(regulating the size, placement and material composition of driveways); section 10 (requiring dust control treatments); section 11 (requiring the collection of debris and waste); section 12 (requiring the filing of food inspection reports); and section 13 (requiring the paving of certain surfaces in the vicinity of food concession establishments).

Each of these sections was found to violate appellant's vested rights possessed under Michigan law as a prior nonconforming use.

the provisions were constitutionally sound and did not run afoul of state law.[3]

By consent of the parties and order of the court, dated August 31, 1984, the District Court's opinion and order were made a final judgment and a permanent injunction. Appellant then requested costs and attorney's fees in both *Seaway* I and *Seaway* II. The District Court granted appellant's request with respect to *Seaway* I, but denied the request for $20,085.80 in *Seaway* II.

Appellant's request for fees is based on 42 U.S.C. § 1988:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Appellant's position is that it instituted an action to "enforce" section 1983 (its constitutional claims) and it prevailed in that action (*i.e.*, it succeeded in enjoining eight of the twelve substantive provisions of the township ordinance). Appellee responds, and the District Court agreed, that there was no substantial question as to the constitutional validity of the ordinance provisions whose enforcement appellant succeeded in enjoining and that no reasonable relationship existed between the constitutional claims for which fees could be sought and appellant's ultimate success.

■ Appellant's request for attorney's fees arises in a somewhat anomalous context. Appellant alleged two types of claims against appellee: constitutional (section 1983) claims and state law claims. If appellant had asserted only its section 1983 claims and prevailed, it would have been entitled to attorney's fees under section 1988.[4] Had appellant not asserted a section 1983 claim, but instead asserted only the state law claims,[5] or a federal law claim that is not listed in section 1988, and prevailed, it would not have been entitled to attorney's fees.[6] Appellant asserted both fee and non-fee claims in its complaint. The trial court, to the extent that it reached the merits, only addressed the non-fee claim, because appellant succeeded on that claim, and the court, following well-settled doctrine, refused to comment unnecessarily on the constitutional issues raised by the fee claim. Appellant has prevailed in an action to enforce a fee claim, but, for reasons unrelated to the merits of that claim, the fee claim has not been addressed.[7]

3. The two provisions that went unchallenged were section 4 (prohibiting the exhibition of films visually depicting certain sexual conduct by persons under the age of 18) and section 5 (prohibiting the exhibition, to minors, of films containing certain sexually explicit material). The two that the District Court found likely to survive both constitutional and state law attack were section 3 (prohibiting the exhibition of films containing certain sexually explicit material where the exhibition is viewable from any residential dwelling) and section 8 (requiring the film screen to be placed or shielded such that it is not viewable by motorists using a public highway or road). The District Court found that section 3 is no broader than necessary to protect the privacy of those living near the theaters and that section 8 is a content-neutral regulation that advances a government interest in preventing traffic problems on nearby roads.

4. Such claims are often referred to as "fee claims."

5. Of course, if appellant's only claims arose under state law, it would not have been in federal court unless there was diversity of citizenship. *See* 28 U.S.C. § 1332.

6. Such claims are often referred to as "non-fee claims."

7. The trial court only reached the merits at the stage of a preliminary injunction. At that point, the case was settled by the parties with the court's consent. This fact does not affect the determination that appellant prevailed in its action. Congress did not intend to have the authority to award fees extinguished by the fact that the case was settled. *See Smith v. Robinson,* 468 U.S. 992, 1006, 104 S.Ct. 3457, 3466, 82 L.Ed.2d 746 (1984). Also, so long as the party has prevailed on the case as a whole, it is entitled to fees for all time reasonably spent on the matter. *Northcross v. Board of Ed.,* 611 F.2d 624, 636 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). Where success is not complete, the district court should award fees in an amount that is reasonable in relation to the results obtained. *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40 (1983). Here, appellant was successful in permanently enjoining enforce-

The Supreme Court addressed this type of situation in *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). Plaintiff filed a section 1983 suit challenging Connecticut's federally funded Aid to Families with Dependent Children program. The complaint alleged violation of the Social Security Act and the equal protection and due process clauses of the fourteenth amendment. Plaintiff invoked jurisdiction under 28 U.S.C. § 1343. The suit itself ultimately was settled favorably to plaintiff. Defendant argued that section 1988 did not authorize the award of attorney's fees in a section 1983 action unless section 1983 was being invoked as a remedy for a constitutional violation or for violation of a federal statute providing for the protection of civil rights or equal rights. The Court rejected such a limitation to section 1988, but noted initially that plaintiff "did allege constitutional claims which the District Court and the Court of Appeals both found to be sufficiently substantial to support federal jurisdiction under *Hagans v. Lavine*, 415 U.S. 528 [94 S.Ct. 1372, 39 L.Ed.2d 577]." *Maher*, 448 U.S. at 128 n. 10, 100 S.Ct. at 2574 n. 10. Thus, the Court pointed out, even if defendant correctly interpreted section 1988, plaintiff still would have been entitled to fees based on her "sufficiently substantial" constitutional claims.

The legislative history makes it clear that Congress intended fees to be awarded where a pendent constitutional claim is involved, even if the statutory claim on which the plaintiff prevailed is one for which fees cannot be awarded under the Act. The Report of the Committee on the Judiciary of the House of Representatives accompanying H.R. 15460, a bill substantially identical to the Senate bill that was finally enacted, stated:

> To the extent a plaintiff joins a claim under one of the statutes enumerated in H.R. 15460 with a claim that does not allow attorney fees, that plaintiff, if it prevails on the non-fee claim, is entitled to a determination on the other

claim for the purpose of awarding fees. *Morales v. Haines*, 486 F.2d 880 (7th Cir.1973). In some instances, however, the claim with fees may involve a constitutional question which the courts are reluctant to resolve if the non-constitutional claim is dispositive. *Hagans v. Lavine*, 415 U.S. 528 [94 S.Ct. 1372, 39 L.Ed.2d 577] (1974). In such cases, if the claim for which fees may be awarded meets the 'substantiality' test, see *Hagans v. Lavine, supra; United Mine Workers v. Gibbs*, 383 U.S. 715 [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966), attorney's fees may be allowed even though the court declines to enter judgment for the plaintiff on that claim, so long as the plaintiff prevails on the non-fee claim arising out of a 'common nucleus of operative fact.' *United Mine Workers v. Gibbs, supra*, at 725 [86 S.Ct. at 1138]. H.R.Rep. No. 94–1558, p. 4, n. 7 (1976).

448 U.S. at 132, n. 15, 100 S.Ct. at 2576 n. 15. Three Justices declined to join the part of the majority opinion examining the question whether section 1988 allows an award of fees for prevailing on a federal non-civil-rights statutory claim. They found that portion unnecessary because they agreed with the majority that the complaint "alleged 'substantial' constitutional claims as defined in *Hagans v. Lavine*, 415 U.S. 528 [94 S.Ct. 1372, 39 L.Ed.2d 577] (1974)." 448 U.S. at 134, 100 S.Ct. at 2577 (Powell, J., concurring). "In this case ... the complaint included a substantial constitutional claim which 'remained in the case until the entire dispute was settled by the entry of a consent decree.'" *Id.* (quoting the majority opinion). Thus, the concurring Justices "ha[d] no occasion to look behind the settlement agreement to evaluate further the constitutional cause of action." *Id.*

The test quoted from the legislative history for determining when fees may be awarded based on an unaddressed fee claim—*i.e.*, the requirements that the fee claim be substantial and that the fee and

ment of eight provisions of the township ordinance.

non-fee claims arise out of a common nucleus of operative fact—is identical to that that a district court must apply when determining whether the court has pendent jurisdiction over state law claims.[8] In the present case, appellant made constitutional challenges to ten of the provisions of Ordinance 77. The only jurisdiction the court could have had over the state law claims, which the court ruled were likely to be successful as to eight of the provisions, was pendent jurisdiction. If the District Court had pendent jurisdiction over the state law claims, as it presumably found that it did, then the constitutional (fee) claims were "substantial" and the fee and non-fee claims must have arisen out of a "common nucleus of operative fact." *See McDonald v. Doe*, 748 F.2d 1055, 1056–57 (5th Cir.1984), *reh'g denied*, 753 F.2d 1075 (1985) (en banc). In other words, to hold that the constitutional claims in this case were not substantial is to hold that the District Court did not have jurisdiction over the state law claims at the time it entered the consent decree. The District Court applied a more stringent "substantiality" test than this and improperly denied the fee request.

The complaint attacked the ordinance as a whole on several constitutional grounds. First, it alleged that the purpose of the ordinance was to put appellant out of business and prevent it from showing sexually explicit material. Second, it alleged that the ordinance contained content-based speech restrictions. Third, it claimed that the ordinance gave the township arbitrary and uncontrolled discretion; fourth, that it was overly vague and broad; fifth, that it violates the equal protection clause; and sixth, that it is an unconstitutional taking. The District Court, in its fees opinion, found that, based on the record before it, these claims were not substantial. It found the "improper purpose" claim insubstantial because there was no evidence in

the record to dispute appellee's evidence of a proper purpose. The court also concluded that the eight sections would have been upheld as valid exercises of police and zoning powers—*i.e.*, that they were drawn narrowly enough and were essentially content-neutral.

The District Court's error was that it looked at the record at the time of the consent decree to determine, in effect, whether the constitutional claims could survive a summary judgment motion. For example, the court's finding that appellant's claim that the ordinance was enacted with the purpose of restricting speech content was insubstantial was not based on the ground that such facts, if true, would not state a claim; rather, the court based its finding of insubstantiality on the ground that a review of the record revealed no evidence that there was such an impermissible purpose. The "substantiality" test, however, does not contemplate such an inquiry into the proof behind the pleadings. A claim is insubstantial if it is "obviously without merit" or if "its unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." *Hagans*, 415 U.S. at 537, 94 S.Ct. at 1379. The claim must be "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court] or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits." *Id.*, 415 U.S. at 543, 94 S.Ct. at 1382 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666–67, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974)). This test does not require the claim, in order to be substantial, to be supported by evidence.[9] *See also Seals v. Quarterly*

---

**8.** In fact, the cases cited by the House Report where the test is set forth are pendent jurisdiction cases.

**9.** The court's conclusion that the provisions were valid exercises of zoning and police pow-

ers similarly imposed more stringent requirements than are found in the substantiality test. Appellant alleged that the regulations imposed an undue economic burden on it. The balancing inherent in the court's determination

*County Court,* 562 F.2d 390 (6th Cir.1977) (holding that if a claim is substantial enough to support jurisdiction over a pendent claim, and resolution of the pendent claim completely disposes of the controversy, fees should be awarded regardless of what the record now reveals about the validity of the constitutional claim).

 The District Court, in effect, confused the substantiality requirement of pendent jurisdiction, which is mandatory, with the discretionary aspects of pendent jurisdiction. Although it is preferable for a district court to refuse to consider a pendent claim if the claim to which it is appended is dismissed before trial (*e.g.,* pursuant to a Rule 12 or 56, Fed.R.Civ.P., motion), such a discretionary refusal to exercise pendent jurisdiction is unrelated to the mandatory "substantiality" requirement. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"). Thus, a federal claim that is sufficiently substantial to support jurisdiction over a pendent claim does not become insubstantial, for such purposes, when it is subsequently dismissed before trial. In this case, the District Court, under the guise of determining whether the constitutional claims were substantial, determined that they could not survive a motion for summary judgment.[10]

The District Court also concluded that appellant's claim for fees was not allowable because the relief appellant ultimately achieved was unrelated to its constitutional challenge to Ordinance 77. "Rather, it was related directly and exclusively to [appellant's] success under its pendent Michigan zoning law theory." *Seaway I & II,* slip op. at 10. This holding is also based on a misapplication of the test for awarding fees in a case involving fee and non-fee claims.

Although the District Court did not explain why it held that appellant's success was not related to its constitutional challenges, it did cite to two recent Supreme Court cases in support of its holding. *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Neither case compels the conclusion that attorney's fees are not awardable in this case.

*Smith* involved a challenge by a handicapped child and his parents to the school system's decision to deny the child a free public education. Plaintiffs originally appealed the decision to the local school committee and then through the state administrative process. They also filed suit in federal district court against the committee and certain state officials. Plaintiffs had a section 1983 claim (based on the fourteenth amendment's due process and equal protection clauses), a federal civil rights statutory claim (the Rehabilitation Act of 1973), a federal non-civil-rights statutory claim (the Education of the Handicapped Act), and

---

that the provisions were valid requires consideration of the factual circumstances of the particular case based on a well-developed record.

**10.** Although the court did find that two of the ordinance provisions would survive constitutional challenge, that holding did not affect the substantiality of the constitutional challenges to the other eight provisions. Even if two of the provisions were valid exercises of police and zoning power, it is not necessarily true that the other eight were. This is so especially in light of the court's holding that the eight provisions violated vested rights possessed as a prior nonconforming use, while the other provisions did not. Furthermore, the fact that two of the provisions survived the "improper purpose" challenge does not mean that the eight provisions

would. The Magistrate's recommendations avoided such an implication by noting that, assuming there was a bad motive behind the ordinance, the two provisions would survive because appellee could show that those two would have been enacted despite the alleged bad motive. Thus, the Magistrate did not conclude that appellant was unlikely to prevail in proving a constitutional violation, due to improper motive, in the enactment of the eight sections. The District Court adopted the Magistrate's recommendations in full and did not address the "impermissible purpose" challenge in its opinion. Thus, because there was an issue of fact—regarding appellee's motive—that the District Court never resolved and never needed to resolve, a fee award is permissible.

state law claims. The district court ultimately held that plaintiffs were entitled to free public education under state law and therefore found it unnecessary to reach plaintiffs' federal statutory and constitutional claims. The court awarded attorney's fees based on the constitutional claims, which the court found to be colorable and nonfrivolous. The Court of Appeals for the First Circuit reversed.

The Supreme Court first addressed plaintiffs' argument that the unaddressed constitutional claims provided a basis for an award of fees. The Court began by noting that section 1988 is a broad grant of authority to courts to award attorney's fees to plaintiffs seeking to vindicate federal constitutional and statutory rights. The Court noted, though, that "[d]ue regard must be paid, not only to the fact that a plaintiff 'prevailed,' but also to the relationship between the claims on which effort was expended and the ultimate relief obtained." 468 U.S. at 1006, 104 S.Ct. at 3466. With regard to the specific situation of substantial, unaddressed constitutional claims, the Court reiterated "the requirement that a claim for which fees are awarded be reasonably related to the plaintiff's ultimate success." 468 U.S. at 1007, 104 S.Ct. at 3467.

> In light of the requirement that a claim for which fees are awarded be reasonably related to the plaintiff's ultimate success, it is clear that plaintiffs may not rely simply on the fact that substantial fee-generating claims were made during the course of the litigation. Closer examination of the nature of the claims and the relationship between those claims and petitioners' ultimate success is required.

*Id.*

The *Smith* decision reveals that the relationship requirement is satisfied when, had the fee claim been addressed and plaintiff prevailed on it, plaintiff would have been entitled to the same relief he received absent consideration of the fee claim. "[Section 1988] simply authorizes a district court to assume that the plaintiff has prevailed on his fee-generating claim and to award fees appropriate to that success." *Id.* (footnote omitted). In *Smith*, the Court held that the fee claims were unrelated to plaintiffs' ultimate success. The first fee claim alleged a denial of due process because the School Board refused to grant a full hearing before terminating the child's funding. The Court held that although plaintiffs succeeded in obtaining an injunction to prevent that violation, it was unrelated to their ultimate success and was unrelated to the substantive claims made in those proceedings. Plaintiffs' ultimate success depended on an interpretation of state law; and the due process remedy did not assure them that the law would be interpreted to require funding.

Plaintiffs in *Smith* also made a due process challenge to the impartiality of the state hearing officer. The Court noted that plaintiffs' due process claim only sought relief from further hearings under the regulation permitting impartial hearing officers.

> That due process claim and the substantive claim on which [plaintiffs] ultimately prevailed involved entirely separate legal theories and, more important, would have warranted entirely different relief.... The efforts [plaintiffs] subsequently expended in the judicial process addressed only the substantive question as to which agency, as a matter of state and federal law, was required to pay for Tommy's education. Whether or not the state procedures accorded [plaintiffs] the process they were due had no bearing on that substantive question.

*Smith*, 468 U.S. at 1015, 104 S.Ct. at 3471.[11] The Court's warning about the danger of a contrary holding, *see Smith*, 468 U.S. at 1015, 104 S.Ct. at 3471, was aimed at such a claim—*i.e.*, one where a

---

11. Plaintiffs also made an equal protection claim of right to a publicly financed education for the child. The Court viewed this claim as virtually identical to the Education of the Handicapped Act claim and went on to conclude that Congress did not intend to allow reliance on § 1983 as a remedy for such an equal protection claim—the Act is the sole avenue and it does not provide for attorney's fees. *Smith*, 468 U.S. at 1009-13, 104 S.Ct. at 3468-70.

plaintiff seeks review of an adverse agency determination on a substantive non-fee issue and seeks attorney's fees by virtue of a due process attack on the administrative proceedings themselves.

■ The instant case, by comparison, involves a single request for relief based on alternative legal theories—a state law theory and a constitutional law theory. The District Court's jurisdiction over the state law claims was based, in part, on the fact that they and the constitutional law claims arose out of a common nucleus of operative fact. Thus, as the legislative history cited in *Maher* indicates, there is a sufficient relationship between the two claims to permit an award of attorney's fees based on the constitutional claims.

The *Hensley* case, which the Court relies on in *Smith*, does not compel a different conclusion. *Hensley* makes clear that the purpose of the "relationship between the claims" element of the fees award test is to prevent the award of fees in those cases where the fee and non-fee claims are aimed at achieving different results or where they are based on different facts *and* different legal theories.

It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. See *Davis v. County of Los Angeles,* [8 E.P.D. ¶ 9444, at 5049 (C.D.Cal.1974)]. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940 (footnote omitted). As noted above, appellant's fee and non-fee claims involved a common core of facts, certain of the claims were based on related theories,[12] and the fee and non-fee claims were aimed at achieving the same relief.

In sum, the District Court erred in applying an incorrect standard when determining the substantiality of appellant's constitutional claims. The court also erred in concluding that appellant's constitutional claims were not related to its ultimate success. The case is remanded for a determination of the appropriate amount of attorney's fees to be awarded in *Seaway II,* in light of the results achieved by the consent decree in that case.

ENGEL, Circuit Judge, dissenting.

I respectfully dissent. I agree with the result and logic expressed by United States District Judge Harvey in his memorandum opinion and order filed in the district court on March 25, 1985. In my opinion, his ruling is consistent with *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). I would therefore affirm the district court.

12. For example, appellant's fourteenth amendment "takings" claim is related to the claim that the new ordinance deprived appellant of vested rights possessed under state law as a prior non-conforming use. The District Court's fee opinion did not address the substantiality of that constitutional claim.