RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0214p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

VILLAGE OF MAINEVILLE, OHIO; CULLEY
PROPERTIES, LTD.; RICHARD J. IANITTI,
            *Plaintiffs,*

SALT RUN, LLC; COBBLESTONE
DEVELOPMENT COMPANY; IN-LINE
DEVELOPMENT COMPANY; DONALD R.
MISRACH; DAVID L. WITTEKIND,
            *Plaintiffs-Appellants,*

            *v.*

HAMILTON TOWNSHIP BOARD OF TRUSTEES,
            *Defendant-Appellee.*

No. 12-4379

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:10-cv-00690—Sandra S. Beckwith, District Judge.

Argued: August 2, 2013

Decided and Filed: August 9, 2013

Before: CLAY, SUTTON and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Edward P. Akin, ARONOFF, ROSEN & HUNT, Cincinnati, Ohio, for
Appellants. Wilson G. Weisenfelder, Jr., RENDIGS, FRY, KIELY & DENNIS, LLP,
Cincinnati, Ohio, for Appellee. **ON BRIEF:** Kevin Lee Swick, ARONOFF, ROSEN
& HUNT, Cincinnati, Ohio, for Appellants. Wilson G. Weisenfelder, Jr., RENDIGS,
FRY, KIELY & DENNIS, LLP, Cincinnati, Ohio, for Appellee.

1

———————————————

**OPINION**

———————————————

SUTTON, Circuit Judge. Hamilton Township passed a resolution imposing fees on developers of residential property in the area. As a covered developer, Salt Run sought to avoid the fees by convincing the Village of Maineville to annex the land the company owned. Hamilton Township countered this maneuver by placing a lien on the property anyway. Salt Run responded by suing the Township, raising a host of federal and state law claims, including a takings claim under the Fifth and Fourteenth Amendments. Meanwhile, the Ohio Supreme Court ruled that Hamilton Township had no right to impose the fees in the first place. The district court granted judgment in favor of Salt Run on some of its claims but denied its claim that the lien amounted to an unconstitutional taking. Salt Run challenges the district court's ruling on the takings claim and, what may go to the heart of the matter, asks for attorney's fees as well. We affirm.

I.

Salt Run develops properties for residential use. It buys land, puts the infrastructure in place and sells units to home builders. Salt Run bought a stretch of land in Hamilton Township and began developing it into two subdivisions.

The developer's plans hit a snag in 2007, when Hamilton Township passed a resolution assessing "impact fees" for new developments. R.25-1 at 1. Under the resolution, once Salt Run sold a lot to a builder, the builder would have to pay $2,100 per lot when it applied to the Township for a zoning certificate. Those fees, the Township said, would compensate it for the cost of providing roads, police, fire protection and parks.

The Township's regulations placed economic pressures on Salt Run's business model, all at a time when the economy and real estate market were foundering. For one,

the regulations limited the types of developments Salt Run could plan. For another, the impact fees effectively increased the cost of Salt Run's lots. For both reasons, Salt Run sought to and ultimately did convince the Village of Maineville to annex its land. After the annexation, the properties remained in Hamilton Township but became subject to Maineville's control, a form of governmental joint tenancy that subjected the properties to some regulations from the former and others from the latter. *See* Ohio Rev. Code § 709.023. Maineville took over zoning authority and provided police services, while Hamilton Township handled fire services and parks. Salt Run took the position that the builders that bought its properties could now avoid Hamilton's impact fees because the builders would be seeking zoning approval from Maineville, not Hamilton.

Hamilton Township sued Salt Run in state court to stop the annexation. When that failed, Hamilton tried another tack. It asked Gary Boeres, a member of the local government, to file an affidavit with Warren County stating that Salt Run's properties were "still subject to the provisions of Hamilton Township['s] . . . impact fee schedules," any annexation notwithstanding. R.25-1 at 25. Hamilton Township asserted "a continuing and subsisting lien on the property . . . for the payment and collection of the impact fees." *Id*.

At roughly this time, Salt Run signed a development contract with M/I Homes, a home building company. The contract required M/I to buy 41 lots, nearly one quarter of the total property, at a minimum of 12 lots per year. Salt Run assured M/I that Hamilton's impact fees would not apply and agreed that Salt Run would cover the cost if it were wrong. When M/I's title company learned about Boeres's affidavit, Salt Run placed over $40,000 in an escrow account to satisfy any concerns. With that money tied up, Salt Run could not keep up with payments on its loan from Fifth Third Bank, prompting a default.

Salt Run sued Hamilton Township in state court. It asked for a declaratory judgment to the effect that the affidavit violated state law and that it had no obligation to pay impact fees to Hamilton. It brought three other state law claims as well as a

§ 1983 claim that the lien amounted to an unconstitutional taking. The Township removed the case to federal court, and the parties filed cross-motions for summary judgment. In the meantime, other litigants sued the Township in state court over its attempts to collect impact fees, prompting the district court to stay Salt Run's case. The Ohio Supreme Court eventually ruled that the Township lacked authority under state law to collect the fees. *Drees Co. v. Hamilton Twp.*, 970 N.E.2d 916 (Ohio 2012).

After the Ohio Supreme Court's decision, the district court resolved the parties' competing motions for summary judgment. It granted in part the two declaratory judgments Salt Run requested but denied Salt Run's other state law claims and its takings claim. Salt Run appealed the denial of its takings claim and, for the first time on appeal, argues that the district court should have awarded it attorney's fees under § 1988.

II.

The Fifth Amendment prevents the National Government and, through the Fourteenth Amendment, the States from "tak[ing]" "private property . . . for public use, without just compensation." The guarantee applies to a variety of government takings, including the regulatory taking to which Hamilton allegedly subjected Salt Run through its lien and impact fees. *See McCarthy v. City of Cleveland*, 626 F.3d 280, 284 (6th Cir. 2010); *see generally Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978). So long as the taking serves a "public use," the guarantee does not operate to ban takings but to ensure that the government provides "just compensation" for them. If a government's appropriation of property is directed to a public use and if the government pays fair value, it has not offended the Fifth Amendment, all of which generally means a litigant must "seek compensation through the procedures the State has provided" before bringing a takings claim. *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194 (1985). *Cf. Horne v. Dep't of Agric.*, 133 S. Ct. 2053, 2062 (2013) (treating as ripe a takings claim raised as an affirmative defense to a federal civil

enforcement action in the absence of an "alternative . . . and adequate remedial scheme") (internal quotation marks omitted).

The parties share common ground about several points relevant to Salt Run's appeal. They agree that, until a property owner asks the State for relief, a "taking claim is not yet ripe," and the owner "cannot claim a violation . . . until it has used the procedure and been denied just compensation." *Williamson Cnty.*, 473 U.S. at 194–95. They agree that Ohio provides an adequate procedure for owners to request compensation for regulatory takings. *See Coles v. Granville*, 448 F.3d 853, 860–61 (6th Cir. 2006). And they agree that Salt Run has not invoked this procedure.

In the normal course, that would be the end of the case. Having failed to ask the State for compensation and having failed to make any argument that the impact fees did not serve a public use, Salt Run's claim is not ripe. *See Williamson Cnty.*, 473 U.S. at 194; *Tex. Gas Transmissions, LLC v. Butler Cnty. Bd. of Comm'rs*, 625 F.3d 973, 976 (6th Cir. 2010); *Cowell v. Palmer Twp.*, 263 F.3d 286, 290 (3d Cir. 2001) (holding challenge to municipal lien unripe); *cf. United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 835 (8th Cir. 2010) ("Legally, until a court makes a determination on the validity of the liens and security interests, there has been no improper taking.").

On appeal, Salt Run offers one potential escape route from this dead end. It claims that the request-compensation-first rule applies only to *as-applied* challenges, not to *facial* challenges, and insists that it filed a facial challenge.

Salt Run forfeited this argument. The company never raised the argument before the district court and indeed never claimed below it had filed a facial challenge. All Salt Run said in its amended complaint was that Hamilton's "recording of the Affidavit, and [its] efforts to place a lien upon the Property . . . are a deprivation of Salt Run's rights under the Fifth and Fourteenth Amendments of the United States Constitution." R.40 ¶¶ 55, 56. In its summary judgment papers, the company did not claim that it had filed a facial challenge, and it did not argue that the nature of its claim would overcome a ripeness objection either. When Hamilton Township pointed out the ripeness defect in

its motion for summary judgment, Salt Run did not respond by arguing that the nature of its challenge excused the defect. It instead said only this—"Just what 'remedies' the Township affords to parties aggrieved by the impact fee remains a mystery," R.35 at 18—a one-sentence response that has more in common with a ripeness concession than anything remotely like its newly minted appellate argument. Below, the company challenged only the nature of the procedure, not whether it had to follow the procedure before filing a lawsuit in federal court. That is a forfeiture, pure and simple. *See Enertech Elec., Inc. v. Mahoning Cnty. Comm'rs*, 85 F.3d 257, 261 (6th Cir. 1996).

Attempting to sidestep this conclusion, Salt Run contends that it asked the district court for a declaratory judgment that Boeres's affidavit was "void ab initio," the hallmark, it says, of a facial challenge. To say that a type of state action is invalid under state law, however, does not distinguish facial challenges from as-applied challenges. An unconstitutional application of a statute *and* the passage of a statute that is unconstitutional in all of its applications may each be equally void from the outset. A township's isolated lien on one developer that does not serve a public use may be unconstitutional ("void") from the outset ("ab initio"). And a township's across-the-board liens on all developers that do not serve a public use may be unconstitutional ("void") from the outset ("ab initio"). Other than the obscuring effect of invoking a Latin phrase, Salt Run has done nothing to show that it raised today's appellate argument—that the facial nature of this challenge excuses the need to seek compensation through the State's procedures—below in the district court.

One potential reason why Salt Run did not raise this argument below is that it was challenging a lien that applied only to it—and that, so far as the record shows, was not duplicated against any other developer. A facial challenge generally argues "that the mere enactment of a statute constitutes a taking," while an as-applied challenge "claim[s] that the particular impact of government action on a specific piece of property requires the payment of just compensation." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 494 (1987). Salt Run, to use its own language, is attacking "the Township's Affidavit" and more specifically "the Township's impact fee lien." Br. at

11. It does not ask for an injunction or declaratory relief under federal law that would block enforcement of a state or local law, ordinance or regulation. Instead, it requests "actual damages, attorneys' fees and costs against" Hamilton. R.40 ¶ 59. Salt Run's "claim" is that "the particular impact" of the local "government's act[]" of filing a lien on "specific piece[s] of property requires the payment of just compensation," *Keystone Bituminous*, 480 U.S. at 494, and that is an as-applied challenge, *see Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 422 (7th Cir. 2010) ("[The plaintiff] has focused on the economic deprivation that she herself will suffer if and when the taking occurs—the characteristic 'as applied' challenge.").

Things might be different if Salt Run had challenged Hamilton's ability to assert liens *at all* and had sought an invalidation of Ohio Rev. Code § 5301.252, which allows "any person" to record an affidavit involving "[t]he happening of any condition or event that may create or terminate an estate or interest." But Salt Run is not arguing that, not even for the first time on appeal. At its broadest, Salt Run characterizes Hamilton Township's attempts to impose "liens for impact fees" on "annexed property" as an improper "collection mechanism." Br. at 14. At its narrowest, Salt Run claims that its problem is with "the Boeres Affidavit" and "the Township's act" of recording it. *Id.* at 13. Neither is a facial challenge. Salt Run does not suggest that Hamilton Township is (or people in general are) constitutionally barred from asserting liens, and nowhere in its briefs does it pinpoint a particular law or ordinance that it finds problematic on its face. Even the most charitable reading of its briefs leaves the reader puzzling as to what "enactment" Salt Run is trying to invalidate. *Keystone Bituminous*, 480 U.S. at 495.

III.

In addition, Salt Run asks for attorney's fees (also for the first time on appeal) on the grounds that the district court granted some of its requested declaratory relief. Here, too, the failure to raise the argument below amounts to a forfeiture. A district court does not commit error by declining to grant attorney's fees never asked of it.

And here, too, there is another problem with (and potential explanation for) Salt Run's last-minute effort to raise this claim. The relevant attorney's fee statute grants attorney's fees to "the prevailing party" in a § 1983 suit. 42 U.S.C. § 1988(b). Yet the district court entered judgment *against* Salt Run on all of its federal constitutional claims. That Salt Run managed to win some of its state law claims does not change matters. Section 1988 gives district courts authority to award attorney's fees for the vindication of federal constitutional and statutory rights, not state law ones. *See, e.g.*, *McDonald v. Doe*, 748 F.2d 1055, 1057 (5th Cir. 1984) (stating that a "plaintiff does not . . . prevail for fee purposes under 42 U.S.C. § 1988 when his constitutional claim is decided adversely to him even though he obtains recovery on a pendent state law claim," and collecting cases); *Mateyko v. Felix*, 924 F.2d 824, 828 (9th Cir. 1991) (same); *cf. Balsley v. LFP, Inc.*, 691 F.3d 747, 774 n.8 (6th Cir. 2012) (citing similar cases in context of Copyright Act fees).

*Seaway Drive-In, Inc. v. Township of Clay*, 791 F.2d 447 (6th Cir. 1986), is not to the contrary. It involved a district court that granted relief on a state law claim and *declined* to reach the plaintiff's federal claim. *Id.* at 450; *see also Rogers Group, Inc. v. Fayetteville*, 683 F.3d 903, 913 (8th Cir. 2012). Here, the district court reached Salt Run's federal claim and entered judgment against the company on it. Salt Run is not a prevailing party under § 1988(b).

## IV.

For these reasons, we affirm.