**UNITED STATES of America, Plaintiff,**

v.

**STATE OF MICHIGAN, James J. Blanchard, Governor of Michigan, Michigan Corrections Commission; Gwen Andrew, Chairman, Michigan Corrections Commission, Thomas Eardley, G. Robert Cotton, Dwayne Waters, Don Le Duc, Members, Michigan Corrections Commission, Michigan Department of Corrections, Perry M. Johnson, Director, Michigan Department of Corrections, Robert Brown, Jr., Deputy Director, Michigan Department of Corrections, Dale Foltz, Regional Administrator, State Prison of Southern Michigan, John Jabe, Warden, Michigan Reformatory, Theodore Koehler, Warden, Marquette Branch Prison, John Prelesnik, Administrator, Reception and Guidance Center, State Prison of Southern Michigan, and Jack Bergman, Administrator, Michigan Intensive Programming Center, Defendants.**

No. G84–63.

United States District Court, W.D. Michigan.

Aug. 28, 1987.

Wm. Bradford Reynolds, Atty. Gen., Patrick M. Joyce, Andrew J. Barrick, Asst. Attys. Gen., Washington, D.C., for plaintiff.

Frank J. Kelly, Atty. Gen., Tom Nelson, Brian MacKenzie, Asst. Attys. Gen., Lansing, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

The National Prison Project of the American Civil Liberties Union Foundation (the "NPP") has since the beginning of this prison conditions case sought to have a voice in the approval and implementation of the Consent Decree and the State Plan for Compliance. Initially, the NPP sought to intervene as a litigating *amicus curiae* for the purpose of assisting the Court, on behalf of the inmates confined at the facilities subject to the Decree and the State Plan, "in its deliberations regarding the entry of" the then-proposed decree. Memorandum in Support of Motion for Leave to Appear as Litigating Amici Curiae at 11. The NPP stated that its "primary purpose in seeking amicus status [was] not to challenge directly the substantive provisions negotiated by the parties and set forth in the 54–page 'plan' but to ensure that the decree imposes truly enforceable and binding obligations on the parties and incorporates an effective monitoring system." *Id.*

at 9. Later, after the NPP had filed an action against various prison officials on behalf of the inmates confined at the subject institutions, *Knop v. Johnson,* No. G84–651 (W.D.Mich.), it sought leave on behalf of its clients to intervene as a plaintiff in this action. The Court granted the NPP's initial request for litigating *amicus* status in part, allowing it to intervene for the purpose of arguing the proposed Consent Decree. Transcript ("T") of March 23, 1984 Hearing at 89. Later, it denied the *Knop* plaintiffs' request to intervene as a party, but granted them *amicus* status in this case. Consent Decree ¶ O; T of June 22, 1984 Hearing at 47.

At the March 31, 1986 compliance hearing the *Knop amicus* requested the Court to grant it status as "fully litigating amici" in the case. T of Mar. 31, 1986 Compliance Hearing at 508. The parties and the *Knop amicus* filed briefs on that issue in June of 1986. The Court took the issue under advisement. On March 25, 1987, in light of further developments in this case as well as in the *Knop* proceeding, the Court issued an Order stating that it was considering "granting the *Knop amicus'* request for litigating status—either as *amicus curiae* or in a position as a plaintiff—conditioned on its acceptance of the Consent Decree in this case as a full and complete settlement of the *Knop* issues that the Decree covers." Order of March 25, 1987 at 2. The Court subsequently received briefs from the parties and the *Knop amicus* on its proposal, as well as a renewed application to intervene as a plaintiff under rule 24(a)(2) from the *Knop amicus,* and

heard oral argument on the issue on April 30, 1987. For the following reasons, the Court concludes that it should grant the *Knop amicus'* request for litigating status and will make it a litigating *amicus.* This allowance is conditioned, however, on the *Knop amicus'* acceptance of the Consent Decree and the State Plan for Compliance as satisfaction of the claims that have yet to be tried in the *Knop* proceeding.

### The Present Status of the Knop Amicus

This case was formally initiated on January 18, 1984 by the United States Department of Justice pursuant to its authority under the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. §§ 1997–1997j. The United States filed suit after approximately two years of investigation and negotiation with the State of Michigan concerning conditions of confinement at three major institutions: the State Prison of Southern Michigan; the Michigan Reformatory; and the Marquette Branch Prison. Concurrent with the filing of its complaint, the United States filed a motion for dismissal of the case and for entry of a proposed consent decree. Shortly thereafter, on February 23, 1984, the NPP filed its request for leave to appear as a litigating *amici.* The United States and the State of Michigan opposed the NPP's request. As I already have mentioned, the NPP eventually became involved in this case as an *amicus curiae* representing the interests of the *Knop* plaintiffs.

Section O of the Consent Decree clearly defines the *Knop amicus'* present role.[1]

---

**1.** Paragraph O provides as follows:

O. The parties by agreeing to this Decree do not intend to create any rights or obligations enforceable by inmates. It is nonetheless recognized that, for purposes of entry of this Decree, the Court has granted limited intervention to the plaintiffs in the pending action of *Hadix v. Johnson, et al.,* Civ. No. 80–73581, E.D. Michigan (the "Hadix plaintiffs"), and the plaintiffs in the pending case of *Knop, et al. v. Johnson, et al.,* Civ. No. 84–651, W.D. Michigan (the "Knop plaintiffs"), to participate as *amicus curiae.* To the extent Defendants are required by paragraphs I, J, K and L of this Decree to furnish reports,

plans, pleadings, memoranda or other documentation to the Court and the United States, an informational copy shall be provided at the same time to the *amicus curiae.* Any responses of the United States, shall be similarly circulated. Within 20 days after receipt of said reports, plans, pleadings, memoranda or other documentation, *Hadix* and *Knop* plaintiffs may respond to the Court and parties as *amicus curiae.* Further, *Hadix* and *Knop* plaintiffs have a limited right, at the Court's discretion, to participate as *amicus curiae* at any hearing which may be called.

Consent Decree ¶ O.

The *amicus* receives copies of all materials filed in the case and exchanged between the parties; the Court has allowed it to file memorandums and briefs concerning compliance issues and to participate in compliance hearings, in part by introducing evidence on certain issues; and the *amicus* has filed suggestions regarding measures the Court should take to enforce compliance with the Consent Decree and the State Plan. In addition, the *amicus* has participated in pre-hearing conferences with the parties and the Court's Independent Expert on compliance issues. I think the parties and the *amicus* will agree that these conferences have significantly aided the compliance process. The *Knop amicus* does not, however, have an unqualified right to present evidence at compliance hearings, and it cannot file motions to modify or to enforce either the Consent Decree or the State Plan. See T of Aug. 21, 1985 Hearing at 6–9. Thus, although the *Knop* plaintiffs (*i.e.,* the inmates at the subject facilities) can inform the Court of their concerns, the Consent Decree and the past rulings of the Court limit the measures they can take to protect their interests in this litigation.

Throughout this litigation, the *Knop* plaintiffs have requested greater authority or an enhanced status in the case. They have made these requests primarily for two reasons. First, they argue that the United States, because of policies pursued by the Department of Justice's Civil Rights Division, is simply a nominal plaintiff and has failed to enforce vigorously the Consent Decree and the State Plan. Secondly, they argue that the existence and progress of this action is adversely affecting their ability to prosecute their own case and that as an *amicus* they possess insufficient authority to protect their interests. The United States responds that it is vigorously prosecuting this action in accordance with its authority under CRIPA, and that the Consent Decree is not precluding the *Knop amicus* from pursuing its own action. *See* 42 U.S.C. § 1997j; Consent Decree ¶ M. The defendants join in plaintiff's arguments, and add that to grant the *Knop*

*amicus* greater authority would violate the parties' intent in agreeing to entry of the Consent Decree and the State Plan.

It was clear to the Court by the end of the March 1986 compliance hearing that the *Knop amicus* and the United States disagree, *inter alia,* about the scope of the Consent Decree, the relationship between the Decree and the State Plan, and which compliance issues the Court should address. These disagreements do not impugn the motives or actions of the United States' Department of Justice, although the record reflects the Court's displeasure with some of the Department's actions in this case. They reflect, rather, differences arising from the United States' perception of its authority under CRIPA and the *Knop amicus'* more personal interest in the conditions of confinement at the subject facilities. Because the United States and the *Knop amicus* clearly disagree on how the Court should interpret the Consent Decree and the State Plan and on how it should monitor defendants' compliance with their obligations under those documents, the Court allowed the *Knop amicus* to raise and to brief the issue of whether it should be given greater authority in the case.

Between the March 1986 compliance hearing and the Court's March 25, 1987 Order the *Knop* case proceeded to trial on five issues the Court had severed from the rest of the case for immediate consideration, and the Court conducted numerous compliance hearings in this case. It remained evident during that year that the United States and the *Knop amicus* continue to share differing views about important compliance issues in this case and that they do not always have common goals and interests. It also became evident that to try the entire *Knop* case would require an enormous expenditure of judicial resources, in addition to time and money by the parties to that case. It took the Court thirty-five days just to try the five severed issues, which are less than one-half of the issues in the case. *See Knop v. Johnson,* No. G84–651, slip op. at 3 (W.D.Mich. Aug. 10, 1987). Finally, it became increasingly clear that to

monitor the implementation of the Consent Decree and the State Plan in this case also will require a major commitment of judicial resources. The Court accordingly issued its March 25, 1987 Order, and received additional briefing from the parties and heard oral arguments on the issue of whether it should grant the *Knop amicus* litigating status in this case.

### Positions of the Parties and the Amicus

The *Knop amicus* requests litigating status for two reasons. First, it argues that the United States is not acting as a true plaintiff in this case. The *amicus* contends that because of policy concerns, the plaintiff will not advocate certain positions or attack certain compliance problems, and accordingly cannot effectively protect the interests of the inmates. The *amicus* also argues that the presence of the Consent Decree in this case is adversely affecting its ability to pursue its claims in the *Knop* proceeding. Although the Consent Decree technically does not preclude the *amicus* from pursuing its own claims, it has had two practical effects that have harmed the *amicus'* interests. The first is that as the State implements the changes required by the Decree and the State Plan, it becomes more difficult for the *amicus* to prove that the inmates' constitutional rights are being violated. The second effect, and from the Court's perspective the only effect it should consider, is that the Court has deferred consideration of certain issues in the *Knop* case because they are the subject of compliance hearings in this case. In particular, the Court declined to conduct an immediate trial on the *Knop* plaintiffs' claim of inadequate mental health care because it has devoted considerable time to that issue in this case.

The *amicus* requests the Court to grant it either status as a litigating *amicus* or status as a party, and has no preference between the two options. It argues that the Court's inherent authority to enforce the Consent Decree and the State Plan supports its request for litigating *amicus*

status and provides a sound basis for the Court to grant the request. *Amicus* observes in particular that the order it requests the Court to enter will not alter the substantive provisions of the Decree and the Plan, but rather is more of a compliance measure akin to the Court's decision to appoint an Independent Expert. It also contends that the Decree's designation of its status as only that of an *amicus curiae* cannot restrict the Court's authority to alter that status as necessary to ensure that the goals and intent of the Consent Decree and the State Plan are fulfilled. Alternatively, the *Knop amicus* argues that it satisfies rule 24(a)(2)'s requirements for intervention as a plaintiff as a matter of right.

The *amicus* attached to its brief in support of its request for litigating status an appendix in which it addresses its views on the Consent Decree and the State Plan and on whether its counsel can recommend that the plaintiff class accept the Decree and the Plan in lieu of continuing with the *Knop* litigation. In this appendix, the *amicus* discusses in detail its views on how the Court should interpret the Decree and the Plan and how it should view the relationship between the two documents. *Amicus* contends, for example, that the Court should not modify the Plan unless defendants can demonstrate that any proposed modification would not pose a significant risk of a constitutional violation, and that under the Consent Decree, and pursuant to its inherent authority, the Court can modify the Decree and the Plan as needed to protect the constitutional rights of the inmates. The *amicus* states that given its understanding of the proper interpretation of the Decree and the Plan, and the Court's past interpretations of the documents, the Decree is a satisfactory vehicle for resolving what it perceives to be continuing deficiencies in the Plan's requirements. It thus concludes that it can accept the Decree and the Plan as a fair and adequate resolution of the issues that remain to be tried in the *Knop* case, and suggests that the Court conduct a hearing on the issue pursuant to rule 23(e).

The plaintiff vigorously opposes any expansion of the *Knop amicus'* role in this proceeding. It argues that the record more than adequately demonstrates that it has taken a sincere interest in this case and has actively sought to ensure that the defendants comply with the requirements of the Consent Decree and the State Plan. The United States contends that it has devoted considerable time and resources to this case and remains committed to ensuring a successful completion of it. It observes, moreover, that paragraph O of the Decree defines the *amicus'* authority in this case, and precludes it from filing motions to amend either the Decree or the Plan. The plaintiff accordingly concludes that the *amicus* does not possess even the authority to request litigating status.

Plaintiff also argues that even if the Court accepts the *amicus'* motion or request, the *amicus* has not satisfied the strict standard for modifying a consent decree and therefore is not entitled to a modification of paragraph O to enhance its status. With regard to the *amicus'* request to intervene, plaintiff argues that the *amicus* has not satisfied the requirements of rule 24(a)(2) and cannot intervene for the sole purpose of enforcing the Consent Decree and the State Plan. It thus requests the Court to deny the *amicus'* request in its entirety.

Defendants concur in many of the plaintiff's arguments on this issue. They argue that any expansion of the *amicus'* role in this case will require the Court to modify the Consent Decree and that the *amicus* has not met the strict standard for requesting a modification of a consent decree. In particular, defendants argue that the Court cannot ignore the parties' express intent, embodied in paragraph O of the Decree, to limit the *Knop amicus'* involvement in this proceeding. They acknowledge the Court's authority to modify the Decree to achieve its intended purposes, but argue that the proceedings to date in this case demonstrate that the Court does not have to grant the *Knop amicus* litigating status to ensure full and complete implementation of the Decree and the State Plan.

Finally, defendants argue that to grant the *Knop amicus'* request would raise a number of subsidiary issues concerning the effect of the Eleventh Amendment on the *amicus'* status and authority; defendants' potential liability for attorney fees; and the effect of the *amicus'* enhanced status on the issues in the *Knop* case. At oral argument both the plaintiff and the defendants raised additional issues concerning the practical effect on the parties' cooperative efforts of granting the *amicus* litigating status; whether to grant the *amicus'* request would advance the interests of the inmates; and whether the *amicus* really has agreed to accept the Decree and the State Plan in satisfaction of the remaining issues in *Knop*.

### Discussion

■ The Court has carefully considered the arguments of the parties and of the *Knop amicus*, and has concluded that it should grant the *amicus* litigating status in this case. I believe that my decision is proper under my inherent authority to appoint persons to appear in a case as litigating *amici curiae*. This grant of litigating status is conditioned, however, on the *amicus'* acceptance of the Decree and the State Plan as a fair and reasonable resolution of the remaining issues in *Knop* (which excludes the access to courts and legal mail issues). I cannot, moreover, state that I will interpret the Consent Decree and the State Plan in accordance with the *amicus'* views. I can only guarantee that the *amicus*, like the plaintiff and the defendants, will be able to present its views to me. Finally, since I have granted the *amicus'* request for litigating *amicus* status, I will deny without prejudice its renewed motion to intervene under rule 24(a)(2).

■ A district court has the inherent authority to appoint *amici curiae* to assist it in a proceeding. *See Hoptowit v. Ray,* 682 F.2d 1237, 1260 (9th Cir.1982). In this case, the *Knop amicus* already is involved in these proceedings as a traditional *amicus curiae, i.e.,* with the authority to com-

ment on compliance issues and to offer suggestions to the Court, and with a limited authority to present evidence and to cross-examine witnesses at compliance hearings. As the parties argue, to enhance this status, and to make the *Knop amicus* one of the rather strange creatures known as a litigating *amicus,* requires a modification of paragraph O of the Consent Decree, and probably of paragraph M of the Decree as well.

■ A consent decree is a hybrid document that "has attributes of both a contract and of a judicial act." *Williams v. Vukovich,* 720 F.2d 909, 920 (6th Cir.1983). As a contract, a consent decree reflects the parties careful negotiations and agreement to precise terms. *United States v. Armour & Co.,* 402 U.S. 673, 681, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971). By entering into a decree, the parties waive their right to further litigation and compromise on their claims. *Id.* Thus, "the *decree* itself cannot be said to have a purpose; rather the *parties* have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve." *Id.* at 681–82, 91 S.Ct. at 1757 (emphasis in original). In determining these purposes, and divining the scope of a consent decree, a court must construe the document as written. *Id.* at 682, 91 S.Ct. at 1757–58; *see United States v. ITT Continental Baking Co.,* 420 U.S. 223, 235–37, 95 S.Ct. 926, 933–35, 43 L.Ed.2d 148 (1975).

In this case, the parties, after much negotiation, reached an agreement on certain steps defendants will take to improve conditions of confinement at the subject institutions and on how the plaintiff will monitor defendants' compliance with the Decree. The parties' purposes, in accordance with the provisions of CRIPA, were to protect the inmates' constitutional rights and to do so in a manner consistent with the precepts of comity and federalism. With regard to the issue presently before the Court, the parties agreed to allow the

*Knop* plaintiffs to participate in this case as an *amicus curiae.*

■ A consent decree, however, particularly one that implicates the interests of the public and of specific groups of persons who are not parties to the decree, is more than simply a contract between two parties. It also is a judicial order and a continuing decree of injunctive relief. "Judicial approval of a settlement agreement places the power and prestige of the court behind the compromise struck by the parties." *Williams,* 720 F.2d at 920. The Court thus maintains a significant interest in the implementation of the decree, and always maintains the authority to modify the injunction "in adaptation to changed conditions." *United States v. Swift & Co.,* 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). In particular, a court retains the authority to modify a decree in light of changed conditions so as to ensure that its purposes are fully implemented. *United States v. United Shoe Corp.,* 391 U.S. 244, 249, 88 S.Ct. 1496, 1499–1500, 20 L.Ed.2d 562 (1968).

The Court thus can modify the Consent Decree in this case if it determines that a modification is needed to achieve the Decree's purposes, *i.e.,* to improve the conditions of confinement at the subject institutions, and thus protect the constitutional rights of the inmates, in a manner consistent with the precepts of comity and federalism. The record reflects that I have done that in the past, such as by appointing an Independent Expert and requiring defendants to take additional limited measures not required by the Decree or the State Plan, in order to achieve full compliance with the requirements of these documents. In deciding the *Knop amicus'* request for litigating status, the Court must address two concerns. First, it must determine whether there is a need to grant the *Knop amicus* litigating status. Secondly, it must address the fact that both parties to the Decree vigorously oppose the *amicus'* request.

I agree with the parties that between the Independent Expert's reports and defend-

ant's own thorough reporting mechanisms, the facts regarding defendants' compliance efforts generally are well-known and not subject to substantial dispute. I believe, however, that granting the *Knop amicus* litigating status would assist me in interpreting those facts and in determining whether they constitute a violation of the Consent Decree or the State Plan. More importantly, to grant the *Knop amicus* litigating status would enhance my ability to ensure that the Decree's underlying purpose of protecting "the constitutionality of the conditions under which prisoners are incarcerated in the subject prisons," Consent Decree ¶ 2, is achieved. The *Knop amicus* currently must present its concerns to the Court in an indirect fashion; it can not file enforcement motions or request directly that the Court interpret the Decree and the Plan in a particular way. Granting the *Knop amicus* litigating status would enhance its ability to present its concerns to the Court.

I cannot, moreover, forget that the *Knop amicus* represents the inmates confined at the subject institutions. It is their concerns, along with the defendants' concern that they not be required to do more than what is needed to protect the inmates' constitutional rights or what is required by the Consent Decree and the State Plan, that are the focus of my attention. As the implementation of the Consent Decree and the Plan has progressed, it has become increasingly important for the inmates to have an effective voice in the compliance process. It also is evident that although the Consent Decree theoretically does not preclude the inmates from maintaining their own action in *Knop,* as a practical manner it has impaired their ability to protect their interests. Most significantly, the Court has deferred action on certain issues in *Knop* because it has devoted considerable time to those issues in this case.

This last factor ties into one of the Court's primary concerns in this case, and with the *Knop amicus'* request: the significant amount of judicial resources it is expending on prison cases. The Court is spending a significant amount of time mon-itoring defendants' compliance efforts in this case. It just spent a significant amount of time trying some of the *Knop* issues, and anticipates that it will take much more time for it to try the remaining issues in that case. While the Court's concerns with its caseload and the amount of time it is spending on this case and the *Knop* litigation do not, of course, by themselves justify modifying the Consent Decree to grant the *Knop amicus* litigating status, the Court can consider them to the extent that its caseload precludes it from giving immediate attention to the *Knop* plaintiffs' claims, and thus in a practical sense impairs their pursuit of their case.

The Court has only so much time it can spend on these cases. Although CRIPA states that a suit brought by the United States "shall not be grounds for delay of or prejudice to any litigation on behalf of parties other than the United States," 42 U.S.C. § 1997j, as a practical manner I believe that many, if not most, courts would defer action on a case brought by a group of inmates if they believed that a CRIPA suit would address the inmates' concerns. To the extent that this occurs, the inmates have a direct and significant interest in the progress of the CRIPA suit.

For the above reasons, the Court believes that the *Knop amicus* has established good cause for being granted litigating status in this case. Under the circumstances of this case, absent litigating status the *Knop* plaintiffs will not be able to protect effectively their interests in this matter. The next issue I must resolve, then, is whether I should grant the *Knop amicus* litigating status in light of the parties' opposition to its request.

■ Initially, the Court observes that since both of the parties to this case are government entities who represent the interests of the public, and since the subject matter of this case also is a matter of public interest and public concern, it must apply slightly different standards for the modification of the Consent Decree than it would apply to decrees that embody agree-

ments between private parties. In a public interest consent decree situation, a court must be flexible and willing to take actions to ensure that the purposes of the decree are achieved. *New York State Association for Retarded Children v. Carey,* 706 F.2d 956, 970–71 (2d Cir.1983). It must recognize, moreover, that the decree may affect the interests of persons other than those who are parties to it. *Id.* at 969. It must ensure that the decree, which bears its imprimatur, is implemented in a manner consistent with the public interest and with the rights of those affected by its provisions. These concerns lessen the effect of the finality doctrines that apply to consent decrees, as well as other judicial orders.

In this case, the Decree's effect on the inmates confined at the subject institutions creates a presumption that they should have an effective role in the Decree's implementation. That presumption can be overcome, however, by evidence that to grant the inmates litigating status would unduly prejudice the parties to the Decree. The Court thus must examine the parties' interests in this matter. I shall first discuss the plaintiff's interest in opposing the *amicus'* request.

Under CRIPA, the United States may request a court to grant "such equitable relief as may be appropriate to insure the minimum corrective measures necessary to insure the full enjoyment" by inmates of their constitutional rights, privileges and immunities. 42 U.S.C. § 1997a(a). Congress enacted CRIPA because institutionalized persons often lack the resources and the ability to protect their constitutional rights and the Department of Justice has the ability to act on their behalf. S.Rep. No. 416, 96th Cong., 2d sess. 19–24, *reprinted in* 1980 U.S.Code Cong. & Admin. News 787, 800–06. Congress authorized the United States Department of Justice to initiate actions in cases where institutionalized persons are subject to egregious and flagrant conditions which deprive them of their constitutional rights, 42 U.S.C. § 1997a(a), and to intervene in actions where its assistance may be necessary. *Id.* § 1997c. Congress expected the Depart-

ment of Justice to exercise its authority under CRIPA so as to assist inmates and persons acting on their behalf. H.Conf. Rep. 897, 96th Cong., 2d sess. 18, *reprinted in* 1980 U.S.Code Cong. & Admin.News 832, 842.

In this case, the Court fails to see how the United States will be prejudiced if it grants the *Knop amicus'* request for litigating status. Consistent with the United States' interests under CRIPA, the *Knop amicus* seeks to protect the inmates' constitutional rights. I appreciate plaintiff's concern that under CRIPA it can ensure only that defendants take the minimum corrective measures necessary to protect the inmates' constitutional rights. By accepting litigating status, however, the *Knop amicus* agrees to be bound by the provisions of the Decree and the Plan, which are designed to ensure that defendants take the minimum measures necessary to protect the inmates' constitutional rights. To the extent, moreover, that the *Knop amicus* may request the Court to require defendants to take measures that exceed those minimally necessary under the Constitution, whatever that may be, plaintiff is free to argue that the Decree and the Plan do not require defendants to take such measures. The Court then will decide what the Decree and the Plan require of the defendants.

My power, moreover, is coextensive with that of the plaintiff under CRIPA to the extent that I can only order defendants to take those measures necessary to ensure that the inmates' constitutional rights are protected. In that respect, I cannot distinguish between "minimum corrective measures" and measures necessary to protect the inmates' constitutional rights. Finally, the *Knop amicus* will have to abide by the provisions of the Consent Decree that are designed to allow the parties to settle compliance disputes between themselves as much as possible, without the need for judicial intervention. I thus believe that to grant the *Knop amicus* litigating status is consistent with CRIPA's requirement that

the plaintiff respect the limitations required by comity and federalism.

The Court similarly does not believe that to grant the *Knop amicus* litigating status would unduly prejudice the defendants' position. The action would not alter defendants' substantive obligations under the Decree and the State Plan. I anticipate, moreover, that the action will not significantly enhance the adversarial nature of this proceeding. I think the *amicus* is committed to resolving compliance disputes without judicial intervention as much as possible, and I expect that it will abide by the procedural requirements of the Consent Decree in good faith. The resources defendants will save by not having to continue with the *Knop* litigation, moreover, should more than outweigh whatever additional expense granting the *Knop amicus'* request in this case will cause them.

Finally, the Court acknowledges the validity of defendants' argument that they do not want to subject themselves to liability for the *amicus'* attorney fees in connection with the compliance measures. It is not the Court's intent to subject defendants to attorney fees liability by granting the *Knop amicus'* request. If the *Knop amicus* does request payment of its attorneys fees, moreover, the Court anticipates, without prejudging the issue, that defendants legitimately could argue that the *Knop amicus* is not a prevailing "party" because defendants have not agreed to a settlement of the remaining *Knop* issues. The *Knop* plaintiffs, rather, would have voluntarily dismissed their claims on those issues under rule 41(a)(2) in exchange for being given litigating status in this case. Alternatively, a waiver of attorney fees could be a condition of the *Knop* plaintiffs' dismissal under rule 41(a)(2) of their remaining claims in *Knop*.

In summary, the Court believes it is justified in modifying paragraph O of the Consent Decree to grant the *Knop amicus* litigating status in this action. In accordance with that status, the *Knop amicus* will be able to present evidence at compliance hearings, to comment on compliance matters, and to seek enforcement of the Consent Decree and the State Plan for Compliance in accordance with the Decree's provisions. See Consent Decree ¶ P. Concurrently, however, it may not litigate further in the *Knop* proceeding those issues that the Consent Decree and the State Plan cover, except the access to courts and legal mail issues, which are only briefly covered by the documents in this case and which have been fully litigated in the *Knop* proceeding. It must, moreover, abide by the procedural requirements of the Consent Decree. *See, e.g.,* Consent Decree ¶¶ K, N, & P. Of course, since it can pursue the access to courts and legal mail issues in the *Knop* proceeding, it may not seek to enforce those issues under the Consent Decree and the State Plan. Finally, given the Eleventh Amendment, the *Knop amicus* is granted litigating status only with regard to the individual defendants.

In accordance with this opinion the Court will enter an order granting the *Knop amicus'* March 31, 1986 oral request for status as a litigating *amicus* and denying without prejudice its April 15, 1987 renewal of application to intervene as a plaintiff under rule 24(a)(2). I simply cannot justify requiring the *Knop* case to proceed on the remaining issues when the Consent Decree and the State Plan already cover them, and the *Knop* plaintiffs are willing to dismiss them in exchange for being granted litigating status in this case. Such an arrangement, moreover, will not prejudice either of the parties to this case. Granting the *Knop amicus* litigating status is consistent with the plaintiff's obligations and authority under CRIPA; in particular, its obligation to assist inmates who are seeking to protect their constitutional rights. In that respect, I cannot understand why the plaintiff opposes the *amicus'* request. As for the defendants, granting the *Knop amicus* litigating status will not alter the substantive provisions of the Decree and the State Plan, and the *Knop* plaintiffs' dismissal of their own suit will save the defendants substantial time and expense. Finally, I cannot justify denying the *Knop amicus'* request when in a practical sense, the exist-

ence of this case is adversely affecting its ability to pursue its own litigation.

I agree with the *amicus* that its "acceptance of the consent decree in return for litigating amicus ... status in this case would, in practical effect, constitute a partial dismissal or compromise of a class action, and would thus invoke the notice requirements of F.R.Civ.P. 23(e)." Appendix at 5–6. In particular, the Court envisions that if the *Knop amicus* accepts the Consent Decree (along with the State Plan) as settlement of its remaining claims, it will voluntarily dismiss those claims pursuant to rule 41(a)(2). I order the *amicus* to submit a proposed notice of hearing to the Court within ten (10) days of the date of this opinion. The Court thereafter will establish a deadline for the *Knop* class members to submit comments on the proposed dismissal of their remaining claims and will schedule a hearing date on the issue. Since it remains unclear whether the *Knop* plaintiffs will accept the Decree and the Plan as a fair and reasonable resolution of their remaining claims, and whether they will voluntarily dismiss their remaining claims in exchange for being granted litigating status in this case, the Court's decision to grant them litigating status will not become final and effective until after the hearing to be scheduled on this issue and until the *Knop* plaintiffs finally agree to a dismissal of their remaining claims.

### ORDER

In accordance with the opinion dated August 28, 1987;

IT IS HEREBY ORDERED that the *Knop amicus'* March 31, 1986 oral request for litigating *amicus* status is GRANTED, conditioned on the *amicus* acceptance of the Consent Decree and the State Plan for Compliance as a full and complete settlement of the remaining claims in the *Knop v. Johnson*, G84–651, case, and on its agreement to dismiss such claims voluntarily under rule 41(a)(2); this portion of the Order shall not become final and effective until the *Knop* plaintiffs have agreed to a dismissal of their remaining claims;

IT IS FURTHER ORDERED that the *Knop* plaintiffs' April 15, 1987 Renewal of Application to Intervene as Plaintiffs Under Rule 24(a)(2) is DENIED without prejudice;

IT IS FURTHER ORDERED that counsel for the *Knop amicus* shall submit a proposed notice of hearing to the Court within ten (10) days of the date of the opinion.