KENTUCKY ASSOCIATION FOR RETARDED CITIZENS, INC., et al., Plaintiffs-Appellants,

v.

Peter CONN, Secretary, Kentucky Department of Human Resources, et al., Defendants-Appellees.

No. 80–3560.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1981.

Decided Sept. 30, 1983.

---

Brian P. Lawlor, argued, Legal Aid Soc., Inc., Henry A. Triplett, Louisville, Ky., Herbert B. Newberg, Philadelphia, Pa., Henry B. Hinton, Jr., Kentucky Juvenile Justice Assistance Project, Morehead, Ky., for plaintiffs-appellants.

James A. Shuffett, Shuffett, Kenton, Curry & Karem, Cathy Lowe, Lexington, argued for Excepticon & Lorenzen.

Martin Z. Kasdan, Jr., Paul F. Fauri, Frankfort, Ky., argued for Conn, McElwain, Lewis, Dir.—Mental Health & Pulliam.

Charles Wickliffe, Gen. Counsel, Frankfort, Ky., for McClure.

H. Hunter Durham, Columbia, Ky., for Lorenzen.

Charles W. Dobbins, Jr., Louisville, Ky., for guardian ad litem.

Steven J. Schwartz, Robert D. Fleischner, Western Massachusetts Legal Services, Northampton, Mass., for amicus curiae Mental Patients Advocacy Project.

William Bradford Reynolds, Asst. Atty. Gen., Leonard Rieser, Atty., U.S. Dept. of Justice, Washington, D.C., for amicus curiae, U.S.A.

James D. Crawford, Joyce S. Meyers, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for amicus curiae (Nat. Ass'n for Retarded Citizens).

Before MERRITT and KENNEDY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This class action was filed by the Kentucky Association for Retarded Citizens and others alleging violations of constitutional and statutory rights of certain mentally retarded citizens housed at the Outwood Facility for the mentally retarded, operated by the Commonwealth of Kentucky at Dawson Springs, Kentucky. In their amended complaint plaintiffs sought, among other things, preliminary and permanent injunctions to halt the planned construction of a new Outwood facility and to prohibit the appropriation or spending of any money for the future construction, completion or purchase of non-community-based facilities for the mentally retarded and developmentally disabled of Kentucky.

In a comprehensive memorandum opinion published in 510 F.Supp. 1233 (W.D.Ky. 1980), Chief District Judge Charles M. Allen denied practically all the relief prayed for by the plaintiffs. In a subsequent opinion rendered July 8, 1980, Chief Judge Allen denied the claim of the attorneys for plaintiffs for attorneys' fees in the amount of $393,206.85, holding that plaintiffs were not the prevailing parties within the meaning of 42 U.S.C. § 1988.

In an opinion published in 674 F.2d 582, cert. denied, sub nom. *Brighton v. Conn,* —— U.S. ——, 103 S.Ct. 457, 74 L.Ed.2d 609 (1982), this court affirmed the decision of the district court on all issues except the

question of claimed attorneys' fees. We reserved determination of the attorneys' fees issue pending the decision of the Supreme Court in *Hensley v. Eckerhart*, —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), reviewing the decision of the Eighth Circuit in 664 F.2d 294 (8th Cir.1981), *cert. granted* 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982).

## I.

Appellants contend that they are entitled to attorneys' fees under the rationale of *Hensley*. Appellees assert that *Hensley* does not change the requirement that a party must succeed on some "significant issue" in the litigation in order to attain "prevailing party" status so as to be entitled to recovery of attorneys' fees (*Hensley, supra,* 103 S.Ct. at 1939).

Chief Judge Allen made comprehensive findings of fact in his opinion dated July 8, 1980, from which we quote the following:

This action is submitted to the Court upon the motion of the plaintiffs for the award of all costs incurred in this action, together with attorneys' fees in the amount of $393,206.85, . . .

.         .         .         .         .

In order to reach a correct resolution of the problems raised by these motions, it is observed that any right plaintiffs have to attorneys' fees is based on 42 U.S.C. Sec. 1988, . . . Under the terms of that statute, the Court must determine whether plaintiffs are, in fact, the prevailing party, and in order to do so, a comparison of the relief requested in the amended complaint and that granted by the Court in its judgment is warranted.

The twenty-five page amended complaint, after requesting class action certification, prayed the Court to issue a preliminary and permanent injunction as to eight phases of relief. The eight phases of injunctive relief requested were:

1. The provision for plaintiffs of a humane living environment, habitation and treatment.

2. A full assessment of the social, personal and adaptive development of each resident of Outwood within 60 days.

3. An individualized habilitation plan for each resident of Outwood who does not have a current plan, the plan to be prepared by professionals to meet the needs of the retarded person and his guardian or representative, and to specify the extent to which the individual could benefit from a less restrictive intermediate or non-intermediate care facility, as well as the services which were available in the community for the care and treatment of the individual.

4. A report within 110 days detailing the services necessary for the care and treatment of all Outwood residents within their home communities, and also to report the programs and staffing patterns required and their costs.

5. A plan to be submitted to the Court within 30 days for completing the implementation of paragraphs 2, 3 and 4.

6. Prohibition of further admissions to Outwood.

7. Prohibition of the construction of the proposed facility at Outwood.

8. The restriction of the defendants from spending any money on future construction of non-community-based facilities.

In addition, the plaintiffs requested that the Court declare that community-based services are the constitutionally required least restrictive alternative for the care and treatment of the mentally retarded, and that they be granted such other relief as is necessary to insure their right to care and treatment in the least restrictive setting within their own communities.

Following the trial, the plaintiffs filed a 160-page proposed findings of fact and a 105-page post-trial memorandum. In the introduction contained in the post-trial memorandum, plaintiffs state that they are seeking (1) to permanently prevent the construction of the replacement facility at Outwood; (2) to secure detailed and comprehensive assessments of all members of plaintiff class, and a determination of the

least restrictive alternative placement that is appropriate for each member of the plaintiff class; (3) to develop appropriate community-based residential placements, programs and services for all members of the plaintiff class.

Immediately preceding this statement of their claims, plaintiffs, after stating that Outwood plaintiffs are suffering extraordinary harm, then go on to state, in essence, that the 176 persons who will live at Outwood should live in the community, there having been no finding that any individual needs to live there and cannot live in a less restrictive, more integrated, less isolated community setting.

An examination of the post-trial memorandum, in substance, reveals the following contentions. The first broad contention, contained in Table of Contents II, A through E, is concerned with the first six allegations that Outwood fails to meet the medical, training and habilitation needs of its residents, that it subjects its residents to abusive care practices, that staffing is insufficient, and that its residents have been harmed by defendants' failure to provide proper habilitative care. Then follow the assertions that Outwood residents have a right to live in the community, that retarded persons of all degrees are being served effectively in the community, and that the rebuilding of Outwood will deprive the plaintiff class of its right to community life.

Then follows Section III entitled "The Law." The first three sections pertain to constitutional arguments that plaintiffs' due process rights are being violated and that they have a right to treatment and freedom from harm, and, further, that they must be placed in the least restrictive environment, and that the Constitution prohibits their segregation at Outwood.

The next series of arguments is to the effect that Sec. 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794, is violated by confinement at Outwood, see pp. 77 through 85. The next argument is that confinement at Outwood violates plaintiffs' right under the Developmental Disabilities Act, 42 U.S.C. Sec. 6010, et seq. The chief thrust of the argument seems to be that the failure to provide appropriate treatment programs and to use physical and chemical restraints properly results in the restriction of the residents at Outwood to a setting which unnecessarily separates them from community services and programs.

Again, on pp. 89 through 93, the chief thrust of the argument made seems to be that the Department for Human Resources has violated K.R.S. Chapter 210 by failing to provide services to plaintiffs at Outwood, and by failing to provide services in less restrictive settings, and to develop community programs and services.

Pages 94 through 98 of the post-trial brief are devoted to the thesis that Outwood residents are involuntarily confined, a contention which this Court, in large measure, adopted in its opinion. Plaintiffs take the position in the memorandum that there is a deprivation of liberty interest which results from a civil commitment, and that it would be proper for the Court to order the creation of a less restrictive non-institutional residential environment to meet the needs of these residents.

.    .    .    .    .

Having in focus now the relief sought in the pleadings and the contention made in plaintiffs' post-trial memorandum, and having in clear view the fact that plaintiffs have been very concerned from the inception of this case to prevent the building of the new facility, we look at the results obtained to determine whether plaintiffs are, in fact, the prevailing parties within the meaning of 42 U.S.C. Sec. 1988. The judgment which was entered in the case, together with the findings of fact, conclusions of law and memorandum opinion, dismissed that portion of the complaint which sought to prevent construction of the new Outwood facility. It prohibited defendants from placing in Outwood or any new Outwood facility mildly or moderately retarded persons for more than 30 days. It specifically provided that each resident at Outwood, with the exception of those adults who acted on their own in applying for admission, was to be considered as involun-

tarily committed, and that every resident who had been committed by a guardian or committee have the same right as minors to seek relief from actions approved by their guardians or committees for or against admission and discharge.

Further, declaratory relief was granted providing that all plaintiffs except those who had voluntarily admitted themselves were entitled to all the rights set out in K.R.S. Chapter 202B, and further that K.R.S. 202B.040 and 202B.060(9) were not applicable to the voluntarily admitted adult applicants since they were entitled to immediate relief on their own applications.

It was also declared that all plaintiffs were entitled to the least restrictive mode of treatment, and to release from Outwood where a proper determination was made by an interdisciplinary team and where there was a community facility adequate for treatment. These rights were declared under K.R.S. 202B, 202B.040 and 202B.060.

It was further declared that Outwood residents would be entitled to all the rights set out in 42 U.S.C. Sec. 6010(3)(A) and (B) and K.R.S. 202B.060(1) through (8) and (10) through (13).

In addition, the judgment prevented the defendants from placing status offenders or persons convicted of criminal offenses in Outwood or the new Outwood. It also provided for improved communications between the interdisciplinary teams at Outwood and the Department for Human Resources, requiring the Department to give priority to persons in Outwood as to community facilities, where a determination is made by the interdisciplinary team that a resident has the potential for placement in such facilities within two years.

.    .    .    .    .

In the case at bar, the central issue was whether or not the defendants had the right to construct a new Outwood, and whether or not they had the right to confine any mentally retarded persons in the new facility to be built. The determination of these questions depended upon whether or not the Court accepted the central core argument made by the plaintiffs that the

least restrictive alternative for all mentally retarded persons is within a community setting. An examination of the testimony introduced by the plaintiffs demonstrates their emphasis upon the theory of normalization. This common thread ran through not only the testimony of experts such as Dr. Dybwad but also through the testimony of administrators such as Ms. Glenn and others.

As the Court noted in its opinion, Kentucky statutes provided explicitly that mentally retarded persons be kept in the least restrictive environment, and the parties argued at length over what was meant by the least restrictive alternatives. Much of the relief which the Court did grant in its judgment was declaratory in nature and was not contested by the defendants. For example, the Court declared the plaintiffs are entitled to the rights set out in the minimum standards in 42 U.S.C. Sec. 6010(3)(A) and (B) and are entitled to the statutory rights set out in K.R.S. 202B.060(1) through (8) and (10) through (13), although defendants did hotly contest the plaintiffs' asserted rights to treatment and habilitation under the United States Constitution, an issue which this Court did not reach because of its holding that these rights were guaranteed by state and federal statutes. Defendants' basic argument with the plaintiffs under those statutes was that they were already providing the required treatment, care and minimum standards set out in the statutes, a contention with which this Court agreed.

Plaintiffs pointed out that they prevailed on the issue of barring status offenders or persons convicted of criminal offenses. This issue was basically briefed by an *amicus curiae* and cannot reasonably be considered as a central issue presented to the Court. Had plaintiffs prevailed upon the main issue, there is no doubt but what they would have been entitled to recover their attorneys' fees expended upon unsuccessful research or litigation, but this appears to be the rare case where a party prevails on some issues but not on the central issue. We, therefore, conclude that plaintiffs are

not the prevailing party within the meaning of 42 U.S.C. Sec. 1988.

## II.

The facts in *Hensley* differ substantially from those in the present case.

The *Hensley* plaintiffs attacked conditions of confinement at a Missouri State Mental institution. The District Court found constitutional violations in five of the six areas attacked by the plaintiffs.

The district court in *Hensley* held that the parties claiming attorneys' fees were the prevailing parties under 42 U.S.C. § 1988 and awarded a fee of $133,332.25. The Court of Appeals for the Eighth Circuit affirmed 664 F.2d 294.

The focus of the opinion of the Supreme Court in *Hensley* is whether parties who are successful on substantial issues involved in litigation but unsuccessful in others should be awarded attorneys' fees for time spent on their unsuccessful claims.

The Supreme Court held that the District Court in *Hensley* did not properly consider the relationship between the extent of success in that litigation and the amount of attorneys' fees awarded, and that where the plaintiffs achieved only limited success, the court should award only that amount of attorneys' fees which is reasonable in relation to the results obtained. The judgment of the Eighth Circuit was vacated and the case was remanded for further proceedings consistent with the opinion of the Supreme Court.

The district court held that in the present case the plaintiffs did not prevail on any significant issue presented by them. We conclude that the findings of fact of the district court quoted above are not clearly erroneous, Rule 52(a), Fed.R.Civ.P., but to the contrary are supported by the record.

For further support of the decision of the district court in the present case compare *Ruckelshaus v. Sierra Club*, —— U.S. ——, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).

Accordingly, the judgment of the district court denying the attorneys' fees to the attorneys for appellants is affirmed. No costs are taxed. The parties will bear their own costs in this court.

MERRITT, Circuit Judge, dissenting.

I would remand this case to the District Court because I do not believe that Judge Allen has considered the full outcome of this case in his denial of attorney fees to the plaintiffs. Judge Allen and the majority have thoroughly analyzed and compared the relief prayed for in the plaintiffs' final complaint with the final judgment of the District Court. It is true that this limited comparison reveals that the court did not grant judgment favorable to any of the plaintiffs' significant requests for relief. However, the defendants may have made marked changes in the level of care provided to patients at the Outwood facility since the instigation of this action. The plaintiffs allege that conditions at Outwood improved significantly after they filed the lawsuit and before trial. The plaintiffs argue that they prevailed at least in part, even though they received little of the formal relief requested in their complaint. As the Supreme Court stated in *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980):

> Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated. Moreover, the Senate report expressly stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment *or without formally obtaining relief.*" (Citation omitted) (Emphasis added.)

I would remand for a determination by the District Court of whether, in light of *Hensley v. Eckerhart*, —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the plaintiffs have prevailed, in the broad sense of the term, on any major issues.