Gary KNOP, John Ford, William Lovett, II, Ramando Valeroso, Gus Jansson, Pat Sommerville, Vernard Cohen, T. Jon Spytma, Robert Shipp, Butch Davis, Ron Mixon, and Kerwin Cook, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Perry M. JOHNSON, Robert Brown, Jr., Dale Foltz, John Jabe, Theodore Koehler, John Prelesnik, and Jack Bergman, Defendants.

No. G84–651.

United States District Court,
W.D. Michigan, S.D.

Dec. 6, 1988.

Adjoa Aiyetoro, Mark J. Lopez, Elizabeth Alexander Nat. Prison Project of the American Civil Liberties Union Foundation, Washington, D.C., for plaintiffs.

Thomas C. Nelson, Asst. Atty. Gen., State of Mich., Lansing, Mich., for defendants.

## OPINION

ENSLEN, District Judge.

On April 12, 1988, plaintiffs filed their petition for attorneys fees under 42 U.S.C. § 1988. That petition seeks, in part, reimbursement for fees and costs incurred by plaintiffs' counsel in their role as *amicus curiae* in *United States v. Michigan*, No. G84–63 (W.D.Mich.). On July 5, 1988, defendants' filed a motion for partial summary judgment, contending that plaintiffs were not entitled to compensation for fees and costs incurred during their participation in *United States v. Michigan*, because they are not a party to that litigation, because they were not a "catalyst" for the entry of the consent decree and state plan for compliance in that litigation, and because they are not entitled to fees and costs incurred in a case in which they participate as *amicus curiae*. Plaintiffs contend that their participation in *United States v. Michigan* is necessary to protect their interests in this case and that they have prevailed on the issues raised in their complaint by participating in the implementation of the consent decree in *United States v. Michigan*.

### Procedural Background

An understanding of the plaintiffs' role in *United States v. Michigan* requires a reiteration of the procedural background of that case, and of the instant litigation. On January 18, 1984, the United States filed its complaint in *United States v. Michigan*, challenging the constitutionality of conditions of confinement at three major penal institutions in Michigan: The State Prison of Southern Michigan; the Michigan Reformatory and the Marquette Branch Prison. Because *United States v. Michigan* is an action under the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997–1997j ("CRIPA"), it joins as defendants the state itself and a number of state officials. On February 23, 1984, the National Prison Project of the American Civil Liberties Union, representing a class consisting of the prisoners in those institutions, filed a motion to participate in *United States v. Michigan* as *amicus curiae*, for the purpose of challenging the parties' proposed consent decree in that action. The Court granted them leave to participate as *amicus curiae* and considered their objections to the proposed consent decree.

On June 11, 1984, the complaint in *Knop v. Johnson* was filed. Plaintiffs are a class consisting of the prisoners confined in the institutions involved in *United States v. Michigan*, and the complaint raises many

issues also addressed in *United States v. Michigan*. Plaintiffs' counsel is the National Prison Project of the American Civil Liberties Union. Many of the defendants in *Knop* are also defendants in *United States v. Michigan*. Since *Knop* is an action under 42 U.S.C. § 1983, however, the state is not a defendant.

On July 16, 1984, a consent decree was filed, with the approval of the Court, in *United States v. Michigan*. Since that date, the Court has held numerous hearings designed to determine the defendants' compliance with the terms of that decree. Counsel for the plaintiffs in *Knop v. Johnson* have participated in each of those hearings as *amicus curiae*.

Because the complaint in *Knop v. Johnson* raised many claims already under consideration in *United States v. Michigan*, including overcrowding, sanitation, food service, mental health services and medical care, as well as several claims not addressed in *United States v. Michigan*, the Court severed the latter issues for trial and deferred consideration of the non-severed claims. The severed issues proceeded to trial, and plaintiffs were granted judgment on many of their claims, while defendants succeeded on other claims. *See, Knop v. Johnson*, 667 F.Supp. 467 (W.D.Mich.1987). The Court recently entered its final order on the claims resolved at trial and those issues are on appeal. *See, Knop v. Johnson*, 685 F.Supp. 636 (W.D.Mich.1988).

During this entire period, counsel for the *Knop* plaintiffs continued to participate as *amicus curiae* in *United States v. Michigan*. After the Court approved the consent decree and state plan for compliance in that case, plaintiffs' counsel directed their efforts toward enforcing the decree's provisions, while continuing to request an enhanced status in that case. Plaintiffs have been allowed to conduct discovery in *Knop v. Johnson* on the non-severed claims, using the information gathered at compliance hearings in *United States v. Michigan*. *See e.g., Knop v. Johnson* Order of March 23, 1988. In August, 1987, I granted them leave to proceed in *United States v. Michigan* as litigating *amicus*

*curiae*, conditioned upon their voluntary dismissal of the non-severed claims in *Knop v. Johnson* and their acceptance of the consent decree in *United States v. Michigan* as a full settlement of those claims. *See, United States v. Michigan*, 116 F.R.D. 655 (W.D.Mich.1987). On July 29, 1988, I approved the voluntary dismissal of the non-severed claims in *Knop v. Johnson*, dismissing those claims without prejudice, and indicating that the dismissal would be amended to dismiss the claims with prejudice if the Sixth Circuit affirmed my order granting the *Knop* plaintiffs litigating *amicus curiae* status in *United States v. Michigan*. While the *Knop* defendants did not actively oppose the dismissal of these claims, they have not consented to a settlement of these claims and continue to oppose the Court's order granting the plaintiffs' litigating status in *United States v. Michigan*.

Prior to my order of July 29, 1988, in *Knop v. Johnson*, plaintiffs' role in *United States v. Michigan* was confined to commenting upon the various compliance reports created in that case, participating in limited fashion in the compliance hearings, and making suggestions to the Court on how it ought to resolve compliance issues which have arisen. They were not allowed to file motions to modify or to enforce the consent decree or state plan in *United States v. Michigan*. As I indicated above, however, plaintiffs have conducted discovery in *Knop* on issues raised in *United States v. Michigan* and have presented the information gathered through that process to the Court at compliance hearings in *United States v. Michigan*. As litigating *amicus curiae*, the *Knop* plaintiffs will have the ability to file motions to modify or enforce the provisions of the consent decree and state plan.

The Court has consistently allowed the *Knop* plaintiffs to participate as *amicus curiae* in *United States v. Michigan* because the pendency of the latter action has, as a practical matter, impaired their ability to protect their interests in *Knop*. This is so, primarily, because the Court has deferred trial on the non-severed claims in *Knop* because it is already considering

those claims through the implementation of the consent decree in *United States v. Michigan.* In addition, the Court has allowed the *Knop* plaintiffs to participate as *amicus* because they are the inmates in the consent decree institutions whose interests are sought to be protected by that decree. While I have never fully adopted the *Knop* plaintiffs' argument that the United States fails to adequately protect the inmates' interests, I have always acknowledged the need for them to have an independent advocate in the compliance proceedings in *United States v. Michigan.* While they have not always been successful in their efforts, *see, e.g., United States v. Michigan,* 680 F.Supp. 270 (W.D.Mich.1988) (declining to enjoin defendants' use of food loaf in all instances), it cannot be disputed that the *Knop* plaintiffs have admirably served their intended function in *United States v. Michigan* by bringing potential compliance issues to the Court's attention and by advocating the inmates' interests during compliance hearings.[1]

### Motion for Summary Judgment

Following their successful trial of the severed claims in *Knop v. Johnson,* the *Knop* plaintiffs filed their motion for attorneys fees in that case. In their amended petition, filed November 28, 1988, plaintiffs request $2,171,102.41 in fees and costs. A portion of the fees and costs requested are attributable to the *Knop* plaintiffs' participation as *amicus* in *United States v. Michigan.* Plaintiffs contend that they are entitled to fees and costs associated with *United States v. Michigan* because they are prevailing parties in *Knop v. Johnson* and their participation in *United States v. Michigan* served to further and protect their interests in the *Knop* litigation. They argue that participation in *United States v. Michigan* was "useful and of a type ordinarily necessary" to secure the final result obtained in *Knop. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air.* 478 U.S. 546, 561, 106 S.Ct. 3088, 3096, 92 L.Ed.2d 439 (1986) (fees awarded in Clean Air Act litigation for time spent in administrative and judicial proceedings to enforce consent decree). Plaintiffs further argue that a prevailing party may recover fees for work performed in collateral proceedings as *amicus* where that work is necessary to protect the plaintiffs' interests in the central litigation. Thus, they do not seek attorneys fees for their participation in *United States v. Michigan* as *"amicus qua amicus,"* rather, they seek fees because their participation in *United States v. Michigan* was necessary to protect their interest in the non-severed claims in *Knop v. Johnson.*

In their motion for summary judgment, the defendants argue that plaintiffs are not entitled to fees for time spent on *United States v. Michigan* because they are not "prevailing parties" in *United States v. Michigan.* First, the defendants argue that plaintiffs do not have an adjudication on the merits of any of the non-severed claims and that those claims are not sufficiently related to the claims upon which plaintiffs prevailed to justify an award of fees. Second, the defendants argue that

---

**1.** The *Knop* plaintiffs point to the following successes in *United States v. Michigan:* (1) the appointment of an independent expert in 1985, an action supported by *amici* and opposed to both plaintiff and defendants, Order of August 5, 1985; (2) the adoption of a modified plan to provide mental health services responding to concerns raised by *amici* in 1986, Order of October 29, 1986; (3) the denial of defendants' motion to modify the mental health plan on the basis of an epidemiological study conducted by defendants, the flaws of which were pointed out by *amici,* Opinion of September 25, 1987; (4) a 1986 order holding defendants in contempt for failing to propose a mental health plan they were prepared to implement; (5) a 1987 order finding defendants not in compliance with cer-

tain fire safety requirements, based primarily upon the objections of *amici;* (6) a 1987 order finding the defendants in contempt for failing to remedy overcrowding at the Reception and Guidance Center at the State Prison of Southern Michigan. In each of these instances, the United States failed to object to the defendants' proposed actions, and the Court based its findings primarily upon objections raised by the *amici* and the independent expert. In a number of other instances, the *Knop amicus* have been instrumental in defining compliance issues and in raising objections which ultimately caused the Court to modify stipulations entered into between the parties. *See, e.g., United States v. Michigan,* Opinions of July 15, 1986, July 28, 1987.

plaintiffs may not be said to have obtained relief through settlement, since their lawsuit was not a "catalyst" for the consent decree in *United States v. Michigan. See, Smith v. Robinson,* 468 U.S. 992, 1006, 104 S.Ct. 3457, 3465, 82 L.Ed.2d 746 (1984); *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); *Kentucky Association for Retarded Citizens v. Conn,* 718 F.2d 182, 186 (6th Cir. 1983); *Robinson v. Kimbrough,* 652 F.2d 458, 465–66 (5th Cir.1981). While the *Knop amicus* have been involved in certain compliance issues arising after the entry of the consent decree, the defendants argue that this activity does not entitle them to fees. Since the consent decree was necessarily broad, both in its scope and in its language, defendants argue that efforts designed to interpret and refine the terms of the consent decree do not constitute success on a "central issue" in the *United States v. Michigan* case. Finally, defendants argue that plaintiffs are not entitled to fees for their work in *United States v. Michigan* because they participated in that case voluntarily as *amicus,* and are not parties to that litigation. *See, Morales v. Turman,* 820 F.2d 728 (5th Cir.1987) (denying attorneys fees to *amici* ).

### Standard

In deciding a motion for summary judgment, the narrow questions presented to the Court are whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). The Court may not try issues of fact on a Rule 56 motion, but is empowered only to determine whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). *See also, Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The question presented by defendants' motion for summary judgment is essentially one of law: whether plaintiffs are entitled to attorneys fees and costs incurred during their participation as *amicus curiae* in *United States v. Michigan.* While there may be disputes as to which hours claimed are attributable to that participation and which are not, I find that the issue is ripe for summary resolution, since it is primarily a legal issue. I also note that my decision in *Knop v. Johnson* is currently on appeal to the Sixth Circuit. Therefore, it remains to be seen whether plaintiffs actually are the "prevailing party" in that litigation. For purposes of this motion, however, I will assume that the *Knop* plaintiffs will prevail on appeal and that they are "prevailing parties" in *Knop v. Johnson,* at least to the extent that they prevailed at trial.

### Discussion

42 U.S.C. § 1988 allows the Court to award attorneys fees to a prevailing party in civil rights litigation. A party is a prevailing party where it "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). *See also, Ruckelshaus v. Sierra Club,* 463 U.S. 680, 688, 103 S.Ct. 3274, 3279, 77 L.Ed.2d 938 (1983) ("to be a 'prevailing party,' one must succeed on the 'central issue,' or 'essentially succee[d] in obtaining the relief he seeks in his claims on the merits' "); *Seaway Drive–In, Inc. v. Township of Clay,* 791 F.2d 447, 450 note 7 (6th Cir.1986); *Kentucky Association for Retarded Citizens v. Conn,* 718 F.2d 182, 186 (6th Cir.1983) (denying fees where plaintiffs prevailed on "some issues but not on the central issue"); *Coen v. Harrison County School Board,* 638 F.2d 24, 26 (5th Cir.1981). The fact that a lawsuit raising constitutional claims is settled or resolved on nonconstitutional grounds does not preclude an award of fees. *Smith v. Robinson,* 468 U.S. 992, 1006, 104 S.Ct. 3457, 3465, 82 L.Ed.2d 746 (1984); *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980) ("The fact that respondent prevailed through a settlement rather than through

litigation does not weaken her claim to fees"). In such cases, "plaintiffs may recover attorney's fees if their lawsuit was a substantial factor or a significant catalyst in motivating the defendants to end their unconstitutional behavior." *Robinson v. Kimbrough*, 652 F.2d 458, 465–66 (5th Cir. 1981). *See also, Gerena–Valentin v. Koch*, 739 F.2d 755, 758–59 (2d Cir.1984); *Commissioners Court of Medina County, Texas v. United States*, 683 F.2d 435, 440 (D.C.Cir.1982); *Coen v. Harrison County School Board*, 638 F.2d 24, 26 (5th Cir. 1981).

■ In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court held that, "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that which is reasonable in light of the results obtained." *Id.* at 440, 103 S.Ct. at 1943. Thus, plaintiffs may recover fees for time spent on claims upon which they prevailed and for time spent on related, but unsuccessful claims. *See, Smith v. Robinson*, 468 U.S. at 1006–07, 104 S.Ct. at 3465–66; *Seaway Drive–In, Inc. v. Township of Clay*, 791 F.2d 447, 454–55 (6th Cir.1986). Where the successful and unsuccessful claims are "aimed at achieving different results or where they are based on different facts *and* different legal theories," *Seaway*, at 455, the plaintiff may not recover fees for time expended on the unsuccessful claims, even though plaintiff may be entitled to fees for the successful claims.

■ Under this standard, it appears clear that plaintiffs are not entitled to fees for the hours spent on *United States v. Michigan* solely because they prevailed on some of the severed claims in *Knop*. The severed claims involved access to toilets at Riverside Correctional Facility, adequate winter clothing, racial discrimination in job assignments, cafeteria serving lines and inmate discipline, and access to the courts. The non-severed claims involve over-crowding, fire safety, sanitation, food service, classification of prisoners, protection from harm, medical care and mental health care. The non-severed claims, those addressed in *United States v. Michigan*, rely upon different facts and different legal theories, and would have resulted in different relief had they proceeded to trial and had plaintiffs succeeded in proving constitutional violations. Since they are not sufficiently related to the claims upon which plaintiffs prevailed, attorneys' fees may not be awarded for time spent on these claims solely because plaintiffs prevailed on the severed claims.

Plaintiffs do not, however, rely upon their success on the severed claims to establish their entitlement to the fees at issue on this motion. Instead, plaintiffs assert that they are entitled to these fees because their participation in *United States v. Michigan* was necessary to protect their interests in the non-severed claims. The essence of plaintiffs' argument is that, "A prevailing party may recover attorneys' fees for work performed in collateral proceedings as *amicus* if the work was necessary to further and protect plaintiffs' interests in the central litigation." Response to Defendants' Motion for Partial Summary Judgment at 2. They argue that their participation in *United States v. Michigan* was necessary because the Court deferred consideration of their non-severed claims due to the pendency of *United States v. Michigan.*

Plaintiffs rely heavily on the Supreme Court's opinion in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). In that case, a citizens group sued the state of Pennsylvania's Department of Transportation to force the state to begin a vehicle emission inspection and maintenance program consistent with the Clean Air Act. The parties entered into a consent decree requiring the state's Department of Transportation to seek legislation for contracts with private garage owners to establish inspection sites. If unsuccessful at this attempt, the Department of Transportation agreed to establish its

own regulations certifying private garages to perform the required inspections. The state legislature refused for a number of years to establish the inspection program, and plaintiffs' counsel incurred fees and costs in securing compliance with the consent decree. This compliance work included involvement in administrative proceedings at the federal and state level, as well as submitting an *amicus* brief in a related state court action.

The Court approved an award of attorneys' fees for these efforts, noting that counsel's appearance in the administrative proceedings, "was as necessary to the attainment of adequate relief for their client as was all of their earlier work in the courtroom which secured Delaware Valley's initial success in obtaining the consent decree." *Id.* at 558, 106 S.Ct. at 3094. The Court further held that, "measures necessary to enforce the remedy ordered by the District Court cannot be divorced from the matters upon which Delaware Valley prevailed in securing the consent decree.... [P]ost judgment monitoring of a consent decree is a compensable activity for which counsel is entitled to a reasonable fee." *Id.* at 559, 106 S.Ct. at 3095.[2] The Court also found that counsel were entitled to fees for their efforts before state and federal administrative agencies, noting that, "for time spent pursuing optional administrative proceedings properly to be included in the calculation of a reasonable attorney's fee, the work must be 'useful and of a type ordinarily necessary' to secure the final result obtained from the litigation." *Id.* at 561, 106 S.Ct. at 3096.

The Supreme Court has considered whether involvement in state court or administrative proceedings may be compensable in a subsequent federal court petition for attorneys fees in a number of cases. In *New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980), the Court held that fees were available to a prevailing plaintiff in a Title VII action for time spent in state court and administrative proceedings, since Title VII required plaintiffs to pursue state remedies as a prerequisite to relief in federal court. In *Webb v. Dyer County Board of Education,* 471 U.S. 234, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985), the Court denied fees for time spent on optional state administrative proceedings, since the plaintiff challenged his termination from public employment under 42 U.S.C. § 1983, which does not require exhaustion of state remedies, rather than under Title VII. The Court held that, "The time that is compensable under § 1988 is that 'reasonably expended *on the litigation.*' When the attorney's fee is allowed 'as part of the costs' ... it is difficult to treat time spent years before the complaint was filed as having been 'expended on the litigation' or to be fairly comprehended as 'part of the costs' of the civil rights action." *Id.* at 242, 105 S.Ct. at 1928. The Court also noted that plaintiff's counsel did not argue that the prior state proceedings were "both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." *Id.* at 243, 105 S.Ct. at 1928.

In *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), the Court denied fees incurred during state administrative proceedings. The plaintiffs in *Smith* alleged violations of the Education for the Handicapped Act, 20 U.S.C. § 1400 *et seq.,* ("EHA") and asserted a claim under 42 U.S.C. § 1983 for alleged violations of due process and equal protection. Their complaint alleged that the state had inappropriately denied a free public education to a handicapped child, and that certain state administrative proceedings denied them due process because the decisionmaker was not impartial. The Court held that plaintiffs' substantive constitutional claims and their claim under the EHA were virtually identical, but found that the EHA was the exclusive remedy for the substantive claims. Ordinarily, plaintiffs who assert

---

**2.** A number of lower courts have also held that time spent monitoring compliance with a consent decree is compensable under § 1988. *Garrity v. Sununu,* 752 F.2d 727 (1st Cir.1984); *Bond v. Stanton,* 630 F.2d 1231 (7th Cir.1980); *Miller v. Carson,* 628 F.2d 346 (5th Cir.1980); *Northcross v. Board of Education,* 611 F.2d 624 (6th Cir.1979).

related constitutional and nonconstitutional claims may recover fees under 42 U.S.C. § 1988, even if the case is resolved on nonconstitutional grounds. In this case, however, the Court denied fees. Since the EHA was the exclusive remedy for plaintiffs' substantive claims, and since that statute did not provide for an award of fees, the Court found that an award of fees under § 1988 would be contrary to Congress' intent in passing the EHA.

The Court further held that plaintiffs' success on their due process claim was insufficient to support an award of fees for time spent pursuing the EHA claim though state administrative agencies, since the substantive and procedural claims were unrelated. The Court denied fees, noting that:

> [The] due process claim and the substantive claim on which petitioners ultimately prevailed involved entirely separate legal theories and, more important, would have warranted entirely different relief.
>
> . . . . .
>
> We conclude that where, as here, petitioners have presented distinctly different claims for different relief, based on different facts and legal theories, and have prevailed only on a nonfee claim, they are not entitled to a fee award simply because the other claim was a constitutional claim that could be asserted through § 1983.

*Id.* at 1015, 104 S.Ct. at 3470. Thus, although the Court acknowledged that fees for time spent in related state proceedings would sometimes be recoverable under § 1988, the Court refused to award such fees where the constitutional claim upon which plaintiffs' prevailed was unrelated to the claim pursued through the collateral proceedings.

■ These cases do not support an award of fees to the plaintiffs in this case for their participation in *United States v. Michigan.* In each of the cases awarding fees, the collateral proceedings were related to the claims upon which plaintiff had already prevailed. For example, in *Delaware Valley,* the administrative proceedings at issue were necessary to enforce the consent decree plaintiffs secured in their federal court action. In *New York Gaslight Club,* the fees were awarded because participation in the state administrative proceedings was a prerequisite to maintaining the federal civil rights litigation. In contrast, fees for participation in optional administrative proceedings were inappropriate in *Webb,* because the administrative proceedings were too far removed from the federal litigation to be considered a portion of that action and because the plaintiff failed to establish that the proceedings were necessary to "advance the civil rights litigation to the stage it reached before settlement." *Webb,* 471 U.S. at 243, 105 S.Ct. at 1928. In *Smith,* fees were denied because the civil rights claim upon which plaintiffs prevailed was not sufficiently related to the claim pursued through the state administrative proceedings.

Similarly, in this case the claims upon which plaintiffs prevailed are unrelated to the claims pursued through *United States v. Michigan.* They rely upon different facts and legal theories, and would have secured materially different relief had plaintiffs pursued them to trial and prevailed. While plaintiffs have incurred fees and costs in an effort to enforce *a* consent decree, they are not parties to that consent decree, as were the plaintiffs in *Delaware Valley.*

Plaintiffs cite a number of lower court cases awarding fees for time spent acting as *amicus curiae* in other litigation. In each of those cases, however, the time expended as *amicus curiae* was expended on issues related to the claims upon which the plaintiffs eventually prevailed. *Arizona v. Maricopa County Medical Society,* 578 F.Supp. 1262 (D.Ariz.1984), for example, was an antitrust action challenging fee settling practices at a number of hospitals. The prevailing party filed an *amicus* brief in a Supreme Court antitrust case addressing peer review fee arrangements. While the court acknowledged that the two cases involved different issues, it awarded counsel fees for a portion of the time spent on the *amicus* brief because it concluded that a paying client might have authorized its

counsel to participate in the Supreme Court case as *amicus*. *Id.* at 1268–69. In *Coleman v. Block*, 589 F.Supp. 1411, 1419 (D.N. D.1984), the court awarded fees for time spent on an *amicus* brief since the case in which the plaintiffs' counsel participated as *amicus* was "crucial to plaintiffs prevailing on the § 1981 issue in this case," an issue upon which the plaintiffs ultimately prevailed. *Id.* at 1419. In *DuBose v. Pierce*, 579 F.Supp. 937 (D.Conn.1984), the plaintiffs participated as *amicus* in three cases raising identical challenges to a practice of the Department of Housing and Urban Development and plaintiffs prevailed on their claim in the central litigation that the practice was unlawful.

Again, in each of these cases, the plaintiffs participated as *amicus curiae* in cases involving the same or similar issues as those involved in their own litigation. They eventually prevailed on the issues in their litigation which were related to the issues in which they participated as *amicus curiae*. Here, however, the claims upon which plaintiffs have prevailed in *Knop* are not related to the claims in *United States v. Michigan* which plaintiffs pursue in their role as *amicus curiae*. The cases cited do not support an award of fees to plaintiffs for their work in *United States v. Michigan*.

*Smith v. Fussenich*, 487 F.Supp. 628 (D.Conn.1980) provides the strongest support for plaintiffs' position. In that case, the New York Legal Action Center ("NYLAC") appeared as *amicus* in a class action suit challenging a Connecticut statute which prohibited convicted felons from working as private detectives or security guards. NYLAC eventually entered its appearance as counsel for the plaintiff class, and the original counsel waived its right to attorney's fees. After plaintiffs prevailed on the merits of their claim, the court awarded attorneys fees to NYLAC for the time spent as *amicus* and for the time spent as counsel for plaintiffs. The court justified its award of fees by noting that "[T]he applicant actively pursued plaintiffs' interests not only as *amicus* but also as counsel of record and, as a civil rights organization has not exacted any fees or costs from the plaintiffs. Moreover, the ... lawyers who represented the plaintiffs prior to the applicant's formal appearance have waived their rights to fees. Under these circumstances we believe that fairness and equity require that appropriate counsel fees be awarded for the applicant's services as an *amicus* in the early stages of this case." *Id.* at 630.

The *Smith* court's appeal to fairness and equity certainly favor plaintiffs' position in this case. Here, plaintiffs' counsel, like the counsel in *Smith*, have vigorously pursued their clients' interests both as *amicus* and as counsel for the plaintiff class. In addition, the United States, as plaintiff in *United States v. Michigan*, is ineligible for attorneys fees. However, unlike *Smith*, plaintiffs' counsel has participated as *amicus* only on claims on which the plaintiffs have yet to prevail. While *Smith* supports the proposition that attorneys fees for time spent as an *amicus* are compensable under § 1988, it does not support an award of fees in this case.

If plaintiffs' are entitled to fees for time spent on *United States v. Michigan*, it must be because their participation in that case has made them "prevailing parties" on the non-severed claims in *Knop*. Defendants argue that plaintiffs are not properly characterized as "prevailing parties," because the pendency of *Knop v. Johnson* was not a "catalyst" in the defendants' decision to enter into the *United States v. Michigan* consent decree. They argue that this decree was prompted instead by the United States' CRIPA action against them. In support of this contention, the defendants note that the United States' CRIPA action was filed in January, 1984 and that they agreed to a consent decree before the *Knop* plaintiffs filed their lawsuit under 42 U.S.C. § 1983. Defendants further argue that the *Knop* plaintiffs' participation in compliance hearings is not compensable under § 1988 because it has not involved the "central issue" in *United States v. Michigan*, which defendants define as "broad reforms in numerous areas of prison conditions." Memorandum in Support of Motion for Summary Judgment at 8. Defendants

argue that in any institutional litigation, "Questions of interpretation, compliance standards and modification are inevitable.... The necessary evolution in the details of compliance, however do not represent the main or central issue." *Id.* Thus, the defendants conclude, the fact that plaintiffs have participated in compliance hearings, and may have succeeded in convincing the Court to adopt a more strict interpretation of the consent decree's requirements does not render them "prevailing parties" on the non-severed claims.

■ As the Supreme Court recognized in *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980), a civil rights plaintiff does not lose his or her right to attorneys simply because the case is settled or resolved " 'without formally obtaining relief' " (*quoting,* S.Rep. No. 94–1011, p. 5 (1976)). Where civil rights plaintiffs settle an action or vindicate their constitutional rights informally, their eligibility for attorneys fees depends upon whether "plaintiffs' lawsuit was a catalyst motivating defendants to provide the primary relief sought in a manner desired by the litigation." *Robinson v. Kimbrough,* 652 F.2d 458, 465 (5th Cir.1981) (*quoting, Iranian Students Association v. Edwards,* 604 F.2d 352, 353 (5th Cir.1979)). In evaluating a claim for attorneys fees under such circumstances, "courts have emphasized the nature of the relief obtained, the chronology of events and the role of the civil rights action in activating change." *Robinson,* 652 F.2d at 465–66. Plaintiffs must demonstrate a causal connection between the litigation in which fees are sought and the relief eventually obtained. *Gerena–Valentin v. Koch,* 739 F.2d 755, 758 (2d Cir.1984). Where multiple litigation addresses the same or similar constitutional claims, and relief is obtained through only one of those cases, plaintiffs in the remaining cases may still be eligible for attorneys fees. As the Second Circuit noted in *Gerena–Valentin:*

> While there is no first-in-time rule governing the award of counsel fees where

multiple litigation is brought, a duplicative action which contributes virtually nothing to the ultimate result cannot justify an award of counsel fees. The purpose of such awards is to "encourage the redress of civil rights violations." *Coop v. City of South Bend,* 635 F.2d 652, 655 (7th Cir.1980). Where that goal is fully achieved by a single well-managed action, an award of compensation to latecomers who add nothing of value would encourage the bringing of superfluous litigation solely for an award of fees.

*Id.* 739 F.2d at 759.

■ Similarly, plaintiffs may be eligible for an award of fees where they have secured the defendants' voluntary compliance with their demands, even if they do not secure formal, judicial relief. As the Fifth Circuit held in *Coen v. Harrison County School Board,* 638 F.2d 24 (5th Cir.1981), "[I]t is enough that [plaintiff's] suit has served to vindicate his rights, whether by court decision, consent judgment or voluntary compliance by the defendant after the filing of the suit." *Id.* at 26. In such cases, "The proper focus is on whether the plaintiff has succeeded on the central issue, as exhibited by the fact the he has obtained the primary relief sought. ... [I]t is also necessary that his suit be, if not the sole reason for his success, at least a major factor in bringing it about. A civil rights plaintiff may not collect attorney fees for demanding that a state officer do what he would have done in any case." *Id.*

Defendants argue that plaintiffs would not be entitled to fees for their activities in *United States v. Michigan* if they sought fees directly in that case, because plaintiffs have not prevailed on a central issue in *United States v. Michigan.* Defendants point out that they had resolved the merits of the CRIPA action before counsel for the *Knop* plaintiffs sought to intervene or to participate as *amicus* in that action, and that they have never attempted to evade their obligations under the consent decree.[3]

---

**3.** The Court agrees that the defendants have never sought in bad faith to subvert the provisions of the consent decree or to avoid their

obligations under that document. At the most, the defendants have, quite understandably, adopted a narrower interpretation of the decree

Since claims related to overcrowding, medical and mental health care, sanitation, fire safety, protection from harm, classification and food service were addressed by the consent decree and state plan for compliance before the *Knop* plaintiffs intervened as *amicus* and before they filed their lawsuit, the defendants conclude that the *Knop* plaintiffs have not been a catalyst or substantial factor motivating the reforms that have been accomplished through *United States v. Michigan*. They further argue that, as volunteers, the *Knop* plaintiffs are not entitled to fees for work in *United States v. Michigan*, since they are not parties to that lawsuit within the meaning of 42 U.S.C. § 1988. *See, Morales v. Turman*, 820 F.2d 728 (5th Cir.1987).

■ While I think that the defendants substantially understate the degree to which the *Knop* plaintiffs have participated in *United States v. Michigan*, I must agree with them that an award of attorneys fees for that work would be improper. The *Knop* plaintiffs have neither secured a favorable adjudication on their non-severed claims nor have they settled those claims with the defendants. Instead, they voluntarily dismissed those claims under F.R. Civ.P. 41(a)(2), knowing that the defendants did not agree to their enhanced participation in *United States v. Michigan*, and knowing that a subsequent award of attorneys fees for work in that case was doubtful at best. In the opinion offering them litigating *amicus curiae* status, I noted that:

> It is not the Court's intention to subject defendants to attorney fees liability by granting the *Knop amicus'* request. If the *Knop amicus* does request payment of its attorneys fees, moreover, the Court anticipates, without prejudging the issue, that defendants legitimately could argue that the *Knop amicus* is not a prevailing "party" because defendants have not agreed to a settlement of the remaining *Knop* issues. The *Knop*

plaintiffs, rather, would have voluntarily dismissed their claims on those issues under rule 41(a)(2) in exchange for being given litigating status in this case. Alternatively, a waiver of attorney fees could be a condition of the *Knop* plaintiffs' dismissal under rule 41(a)(2) of their remaining claims in *Knop*.

*United States v. Michigan*, 116 F.R.D. 655, 664 (W.D.Mich.1987). It was with this understanding that the *Knop* plaintiffs agreed to dismiss their non-severed claims and to accept the consent decree as a complete resolution of those claims. *Id.* at 660. They could have rejected the Court's offer and pressed their non-severed claims, in the hope of obtaining broader relief. They chose instead to participate in *United States v. Michigan* as *amicus*, a choice I appreciate because it conserves judicial resources, but a choice which precludes an award of attorneys' fees. Under these circumstances, I think it unfair to subject the defendants to attorney fees liability for fees incurred as a result of the plaintiffs' voluntary dismissal of their non-severed claims.

In addition, I note that the *Knop* plaintiffs' counsel originally sought to proceed in *United States v. Michigan*, as *amicus curiae* before the *Knop* lawsuit was filed. They were, at that point, "volunteers" as the term is used in *Morales v. Turman*, 820 F.2d 728 (5th Cir.1987). At the onset of their participation in *United States v. Michigan*, counsel for the *Knop* plaintiffs knew that the consent decree addressed the majority of the issues raised in their non-severed claims. While the Court took pains to insure that the decree would not moot a future lawsuit based upon the same conditions, *see, United States v. Michigan*, 680 F.Supp. at 952 (bench opinion of June 22, 1984), the plaintiffs knew when they filed their complaint that the defendants had already agreed to remedial measures addressing most of the non-severed claims.[4]

than that advocated by the *Knop* plaintiffs and usually than the interpretation adopted by the Court.

**4.** Counsel for the *Knop* plaintiffs participated as *amicus* in the hearing on the proposed consent

decree in *United States v. Michigan*, objecting that the decree was too vague and questioning whether the Department of Justice would vigorously protect the inmates' interests. See, *United States v. Michigan*, 680 F.Supp. 928, 942–43

Under these circumstances, it cannot be said that the *Knop* lawsuit was a catalyst or substantial factor motivating the defendants to voluntarily remedy those conditions.

Moreover, in considering the history of the *Knop* plaintiffs' involvement in *United States v. Michigan,* I cannot find a single instance where the plaintiffs were successful in forcing the defendants to take some remedial action not already contemplated by the consent decree. The plaintiffs have certainly pressed for strict enforcement of that decree, and have at times been successful in raising compliance issues ignored by the United States, or in pointing out mistaken interpretations of the decree. *See, supra* note 1. Despite these efforts, however, they have never succeeded in expanding the scope of the consent decree.

The plaintiffs enumerate several "successes" in their brief on the motion for summary judgment, suggesting that they have indeed been successful in obtaining enhanced relief for their clients through participation in *United States v. Michigan.* While there is no doubt that the plaintiffs' participation in that case has been of value to the Court and that they have been zealous in advocating the interests of the class, most if not all of the remedial measures enumerated by the plaintiffs were the result of collective enforcement efforts by the United States, the Court, through its Independent Expert, and the *Knop amicus.* For example, the Court appointed an Independent Expert on its own motion, not plaintiffs', although plaintiffs certainly supported that appointment. *See, United States v. Michigan,* 680 F.Supp. at 953 (bench opinion of June 21, 1985). Similarly, the mental health issues they point to resulted in a contempt citation against the defendant on the United States' request for sanctions. *See, id.* at 991. While the *amicus'* arguments against the state's second proposed mental health plan were certainly persuasive to the Court, they were not the only reason for the Court's rejection of that plan or for the contempt citation.[5] Plaintiffs also point to the overcrowding area as evidence of their value in advocating the inmates' interests at compliance hearings. While their efforts in this regard cannot be gainsaid, it is also clear that their most recent suspicions of non-compliance turned out to be unfounded and did not result in sanctions against the defendants. *See,* March 1988 Report of the Independent Expert, pages 9–14.

It is clear that the participation of the *Knop* plaintiffs as *amicus* in *United States v. Michigan* has led to a stricter interpretation of the consent decree than might have resulted had the United States pursued this action alone. To that extent, the *Knop* plaintiffs have certainly advanced the interests of the class. But the question is not whether their participation in *United States v. Michigan* has been valuable to the class or to the Court. Rath-

(W.D.Mich.1987) (reprinting bench opinion of March 23, 1984). I rejected the parties' original proposed consent decree on the ground that it was impermissibly vague, and the parties returned to Court in June, 1984 with a decree satisfying my objection. *See, Id.* at 949–50 (bench opinion of June 22, 1984). I note that, although I have at times chided the Department of Justice for its lack of vigor on certain compliance issues, I have never adopted the *Knop* plaintiffs' argument that the United States is only a "nominal plaintiff" in *United States v. Michigan,* nor do I think that is a fair characterization of the government's efforts in that litigation.

The plaintiffs filed their lawsuit between the rejection of the first consent decree and the hearing adopting that decree. While their objections to the original decree were instrumental in my decision to reject that document, the *Knop* plaintiffs were not involved in the negotia-

tions which lead to the current consent decree. In addition, during the course of their involvement in *United States v. Michigan,* the *Knop* plaintiffs have never successfully attacked the substantive terms of the decree nor have they ever been allowed to pursue an expansion of its terms. In accepting their current status as litigating *amicus,* the *Knop* plaintiffs agreed to accept the decree as a final resolution of their non-severed claims. Their involvement in *United States v. Michigan* has been limited to monitoring the defendants' compliance with a decree defendants consented to without prompting by the *Knop* plaintiffs.

5. The *Knop* plaintiffs were, however, successful in pointing out analytical flaws in the defendants' epidemiological study, thwarting the defendants' most recent attempt to modify their mental health plan.

er, the issue is whether it has made them prevailing parties on the non-severed claims in *Knop v. Johnson* because their participation in *United States v. Michigan* was a catalyst or substantial factor motivating the defendants to take the remedial actions they have taken. I cannot hold that it has, because the substantive aspects of the consent decree and state plan for compliance were agreed to by the defendants before the *Knop* plaintiffs appeared on the scene, and because plaintiffs have never secured for their clients relief in excess of that to which the defendants had already agreed. *See, Coen v. Harrison County School Board,* 638 F.2d 24, 26 (5th Cir.1981).

■ As defendants argue, plaintiffs would not be entitled to an award of fees in *United States v. Michigan* because they are not parties to that litigation. *Morales v. Turman,* 820 F.2d 728 (5th Cir.1987), cited by the defendants, is an instructive case. In that case, several non-profit organizations participated as *amici* in a lawsuit challenging conditions at Texas juvenile facilities. While the *amici* were allowed to participate "as parties," they never purported to represent that plaintiff class nor did they seek to intervene as plaintiffs. In addition, the *amici* did not participate in extensive settlement negotiations which eventually terminated the lawsuit. The Fifth Circuit reversed an award of attorney fees to the *amici,* holding that the award was not justified under 42 U.S.C. § 1988:

> The statutory language of § 1988 is unambiguous: "the court, in its discretion, may allow *the prevailing party* ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. And the legislative history makes it clear that fees are to be limited to actual parties involved in the suit.... Counsel for amici never purported to represent plaintiffs in this litigation and were never asked to do so.
>
> .    .    .    .    .
>
> Amici's counsel stepped in and out of the litigation, and did not even participate in the protracted settlement negotiations that resolved the controversy. We do not deprecate their purpose or service,

but the fact that amici's counsel, while representing amici, rendered services beneficial to the class does not establish an entitlement to fees.

> .    .    .    .    .
>
> Amici are no parties to the litigation. Thus, amici are not entitled to fees under § 1988.
>
> We do not doubt the contribution of amici, but it does not follow that as volunteers they are entitled to be reimbursed for counsel fees by parties who neither sought nor caused the court to seek their aid.

*Id.* at 732–33.

Clearly, there are substantial differences between the amici described in *Morales* and the *Knop* plaintiffs. The *Knop* plaintiffs represent the class of prisoners at the consent decree institutions, although the United States represents those prisoners' interests as well. Further, the *Knop* plaintiffs have not stepped in and out of the *United States v. Michigan* litigation, as *amici* did in *Morales.* Rather, they participate to the extent permitted by the Court in each compliance hearing and in the pre-hearing conferences between counsel and the Independent Expert mandated by the Court. But *Morales* establishes, rather persuasively, that *amici* are not entitled to fees under § 1988, since they are in essence "volunteers" and since the statute limits the authority to award fees to parties in civil rights litigation. Thus, if the *Knop* plaintiffs sought attorneys fees directly in *United States v. Michigan* for their efforts in that case, they would not be entitled to such an award.

Similarly, plaintiffs are not entitled to an award of fees under *Knop v. Johnson* because they are not "prevailing parties" on the non-severed claims and because their non-severed claims are insufficiently related to the claims upon which they prevailed to support an award of fees. As I indicated earlier, the cases cited by plaintiffs do not support an award of fees for their work as *amici* because in each of the cases cited, the work done in collateral proceedings was related to claims upon which the plaintiff had prevailed. Here, that is not the case, since the plaintiffs have not pre-

vailed on the claims related to *United States v. Michigan.*

### Conclusion

I conclude, therefore, that the defendants' motion for summary judgment should be granted. The plaintiffs are prevailing parties in *Knop v. Johnson* on the severed claims and are entitled to full compensation for their work on those claims. They are not, however, prevailing parties on the non-severed claims. Those claims are not sufficiently related to the severed claims to support an award of fees on that basis. Further, the claims have been voluntarily dismissed in exchange for the right to participate as litigating *amicus* in *United States v. Michigan.* Plaintiffs have neither settled those claims nor secured a favorable adjudication of them. While their participation in *United States v. Michigan* has certainly aided the Court in interpreting the consent decree and has worked to the benefit of the plaintiff class, it has not resulted in the defendants taking remedial measures they would not have taken absent the amicus' participation. I conclude, therefore, that the plaintiffs have not been a catalyst or substantial factor in the relief obtained in *United States v. Michigan* and that they are not entitled to attorneys fees on that basis. Defendant's motion for summary judgment is, therefore, granted.